IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,989

LINUS BAKER,
*Appellant*,

v.

CALVIN HAYDEN, et al.,
*Defendants,*

and

LAURA BREWER, in Her Capacity as Official Custodian of Records
for the Tenth Judicial District,
*Appellee.*


SYLLABUS BY THE COURT


1.

While standing is a requirement for a case or controversy, i.e., justiciability, it is also a component of subject matter jurisdiction that may be raised at any time.


2.

Courts have the duty to determine whether they have subject matter jurisdiction. And the parties cannot vest a court with jurisdiction by agreement, failing to object, or waiver.


3.

Standing can be raised for the first time on appeal. And a court can generally determine the issue when it arises during an appeal related to a motion to dismiss, because it presents a question of law.

4.

When a question of standing is raised, the party asserting the claim has the burden to establish standing requirements.

5.

A plaintiff making a claim under the Kansas Open Records Act (KORA), K.S.A. 45-215 et seq., must establish both (1) any statutory standing requirements imposed by KORA and (2) the traditional requirements of standing.

5.

A party can have standing as a lawsuit begins but lose it before the case is resolved if circumstances change.

6.

To establish traditional standing, a plaintiff must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury because of the challenged conduct. The injury must be particularized, meaning it must affect the plaintiff in a personal and individual way.

Review of the judgment of the Court of Appeals in 55 Kan. App. 2d 473, 419 P.3d 31 (2018). Appeal from Johnson District Court; ROBERT W. FAIRCHILD, judge. Opinion filed July 2, 2021. Appeal dismissed.

*Linus L. Baker*, appellant, argued the cause, and was on the briefs, pro se.

*Joseph R. Colantuono*, of Colantuono Bjerg Guinn Keppler LLC, of Overland Park, argued the cause, and *Richard G. Guinn* and *Isaac Keppler*, of the same firm, *Stephen Phillips*, assistant attorney general, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee Laura Brewer.

2

*Stephen Douglas Bonney*, of ACLU Foundation of Kansas, of Overland Park, and *Nolan Wright*, legal intern, of the same foundation, were on the brief for amicus curiae American Civil Liberties Union Foundation of Kansas.


PER CURIAM: The parties ask us to answer whether the Kansas Open Records Act (KORA), K.S.A. 45-215 et seq., requires a Kansas district court to make audio records of open court proceedings available for public inspection. But we cannot reach this question because we conclude Linus Baker lost a stake in resolving that question at a point after he filed his petition in this case and thus lost standing. Standing is a component of appellate courts' jurisdiction. When a party loses standing, courts lose jurisdiction. And without jurisdiction, we must dismiss the appeal.


FACTUAL AND PROCEDURAL BACKGROUND


Baker, an attorney, made a written request to listen to and copy digital audio recordings made during two public court hearings conducted in the Tenth Judicial District's Johnson County District Court. Those hearings occurred in a protection from abuse case involving Baker's adult daughter. Baker was neither a party in the case nor counsel for any party. He made his request to the then-court administrator for the Tenth Judicial District, Katherine Stocks. The court administrator is the district's designated official custodian of public records. See K.S.A. 2020 Supp. 45-217(e) ("'Official custodian' means any officer or employee of a public agency who is responsible for the maintenance of public records, regardless of whether such records are in the officer's or employee's actual personal custody and control."). While the appeal was pending before this court, Laura Brewer became the court administrator for the Tenth Judicial District and has been substituted in her official capacity as the named party. We will thus refer generally to the "records custodian."

3

The records custodian told Baker the recordings were all exempt from disclosure under KORA. The records custodian suggested he could pay the official court reporter to transcribe them. When Baker insisted on listening to the recordings himself, then-Chief Judge Kevin P. Moriarty interceded and again denied the request. Baker persisted and was consistently denied access. Each time, he was told he could purchase written transcripts from the court reporter at his expense.

The backstory to this involves an incident when Johnson County Sheriff's Department officials went to Baker's residence to serve Baker's adult daughter with a temporary order issued by the Wyandotte County District Court. The officials mistakenly assumed Baker's three-year-old granddaughter was a child referenced in the court order and physically restrained her.

Baker filed a pro se lawsuit over that incident and other matters. He named various Johnson County officials as defendants alleging federal and state law violations. Baker also named the records custodian as a defendant in an official capacity as records custodian for the Tenth Judicial District. He alleged the records custodian refusal to permit inspection of audio recordings of open court hearings violated KORA, as well as his common-law and constitutional rights to access judicial records.

Baker sought declaratory and injunctive relief, compensatory damages, attorney fees, and costs. Relevant to this appeal, he alleged: (1) The Tenth Judicial District is a public agency subject to KORA; (2) the requested audio recordings were public records under KORA; (3) the Tenth Judicial District has a routine of electronically recording court hearings and storing the recordings in its network computer server; (4) the Tenth Judicial District has a "de facto unwritten policy or rule" to deny the public access to those recordings; (5) this unwritten policy or rule violates KORA; and (6) the specific

4

audio recordings he sought were not closed by statute, sealed by court order, or otherwise confidential under Kansas law. In his request for relief, he sought in part:

> "[A] declaratory judgment, injunction, and any other appropriate order issue declaring that the audio recordings made by district court judges of proceedings open to the public are public records not subject to exemption under KORA, an order requiring [the records custodian] to make all audio recordings of hearings that are open to the public which are requested as an Open Records request to be made available to the requestor with the ability of the requestor to make a digital copy of the audio recording by listening to the recording."

During litigation discovery, the records custodian's then-counsel from the Kansas Attorney General's Office gave Baker the two audio recordings that sparked Baker's KORA claim. In doing so, the Attorney General's Office explained: "These [recordings] are provided as a response to your discovery request only, *and not as an admission to the allegations and claims in your petition*." (Emphasis added.)

The records custodian moved to dismiss Baker's claims, arguing KORA exempts "in most instances" audio recordings of court hearings made, maintained, or kept in the Tenth Judicial District's computer network. The records custodian mostly relied on K.S.A. 2020 Supp. 45-219(a) (providing public agency need not provide copies of recordings except under specified circumstances); K.S.A. 2020 Supp. 45-221(a)(1) (public agency not required to provide inspection of record that is "specifically prohibited or restricted by . . . rule of the Kansas supreme court"); and Supreme Court Rule 362 (2020 Kan. S. Ct. R. 422) (providing that "[w]ritten transcripts of electronic recordings shall be prepared by court personnel").

The district court dismissed Baker's claims against the records custodian. The court held audio recordings of open court proceedings made, maintained, or kept by the

Tenth Judicial District were exempt from disclosure under both Rule 362 and K.S.A. 2020 Supp. 45-219(a). It also ruled Baker's demand to inspect the recordings was moot because counsel produced them during discovery. Finally, it ruled Baker had no constitutional or common-law right to the recordings—issues not preserved for our review. The district court also denied attorney fees and costs and then certified its rulings as a final judgment under K.S.A. 2020 Supp. 60-254(b).

Baker appealed. Among his many arguments, he contended his claims were not moot because the legal issue about public access to recordings remained and was capable of repetition. He filed a motion for transfer to this court, which we denied.

A Court of Appeals panel considered the parties' arguments and reversed the district court. See *Baker v. Hayden*, 55 Kan. App. 2d 473, 419 P.3d 31 (2018). As a threshold matter, the panel rejected the district court's mootness ruling. It held the issue was capable of repetition and was of public importance. It noted that the records custodian "continues to advance the argument that Baker was not entitled to the recordings under the KORA." 55 Kan. App. 2d at 477. The panel next held that neither Rule 362 nor K.S.A. 2020 Supp. 45-219(a) exempted audio recordings of open court proceedings made, maintained, or kept by a judicial district from mandatory disclosure under KORA. 55 Kan. App. 2d at 484-85. It then denied Baker's request for attorney fees. Finally, the panel found it "unnecessary" to remand the case to the district court because Baker received the two recordings during discovery. 55 Kan. App. 2d at 485-86.

An exceptional flurry of activity followed the Court of Appeals' decision. The records custodian filed a motion for leave to file an out-of-time motion for rehearing with the panel. The records custodian explained the Attorney General's Office had allowed the deadline to lapse and had refused to file a petition for review with this court. The records custodian argued "substantial issues" had not been addressed, including Sixth

6

Amendment violations that would occur if privileged attorney-client conversations captured by the courtroom recordings were made public. The records custodian included declarations from court reporters in the Third, Tenth, and Twenty-Third Judicial Districts stating attorney-client conversations sometimes can be heard on these recordings. The Court of Appeals denied the motion for leave to file the out-of-time motion for rehearing. The Attorney General's Office withdrew as the records custodian's counsel and other attorneys entered appearances.

The records custodian petitioned this court for review, arguing the Court of Appeals' decision: (1) violates Rule 362; (2) contradicts K.S.A. 2020 Supp. 45-219(a); (3) violates Supreme Court Rule 1001(e)(4) (2020 Kan. S. Ct. R. 615) dealing with media access to open court proceedings; (4) violates criminal defendants' Sixth Amendment rights when the recordings include attorney-client conversations; and (5) improperly circumvents the Supreme Court's rules about payment to court reporters for transcripts. Conspicuously, the records custodian did not seek review of the panel's ruling that exceptions to the mootness doctrine allowed consideration of the issues. 55 Kan. App. 2d at 477. Baker did not cross-petition. We granted review but limited the issues to the records custodian's first two arguments. See Supreme Court Rule 8.03(b)(6)(C)(i) (2020 Kan. S. Ct. R. 52).

As oral arguments approached, we asked the parties to prepare to discuss the basis for this court's jurisdiction. After arguments, we ordered briefing on whether Baker still had standing to pursue relief once he received the two recordings he had sought. In response, both Baker and the records custodian argued the legal dispute between them continues.

7

Our analysis begins with the questions we asked the parties to address: Does this court have jurisdiction and has Baker lost standing? These questions arise because Baker now possesses the recordings he sought. This change in circumstances raises the possibility that Baker lost standing and, when he did, courts lost jurisdiction over his lawsuit.

A discussion of jurisdiction starts with Article 3, § 1 of the Kansas Constitution, which grants the "judicial power" of the state to the courts. The "judicial power" is the "power to hear, consider and determine controversies between rival litigants." *State, ex rel. Brewster v. Mohler*, 98 Kan. 465, 471, 158 P. 408 (1916), *aff'd* 248 U.S. 112, 39 S. Ct. 32, 63 L. Ed. 153 (1918). Having an actual controversy is key; an abstract controversy does not meet the constitutional standard because courts do not give advisory opinions. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896-98, 179 P.3d 366 (2008).

To test whether an actual controversy exists, courts examine four factors. First, the party must have standing. This means the party must have a personal stake in the outcome. A personal stake arises because the party has a right to make a legal claim or seek judicial enforcement of a duty or right. Second, the court asks if the issue to be resolved is moot. Third, the issue must be ripe, having taken fixed and final shape rather than remaining nebulous and contingent. Fourth and finally, the court considers whether the issue presents a political question. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 324, 255 P.3d 1186 (2011) (discussing and defining standing); *Sebelius,* 285 Kan. at 896 (listing four requirements).

The ripeness and political question requirements are not in question here. But the other two factors—standing and mootness—are. The Court of Appeals panel considered

8

whether Baker's possession of the recordings mooted the appeal. It concluded it did not because his request for a declaratory judgment or injunction arose from an issue capable of repetition and of public importance. *Baker*, 55 Kan. App. 2d at 477. But the panel did not consider standing.

"While standing is a requirement for a case-or-controversy, i.e., justiciability, it is also a component of subject matter jurisdiction that may be raised at any time." *Gannon v. State*, 298 Kan. 1107, 1122, 319 P.3d 1196 (2014). "'One of the first and continuing duties of a court is to determine whether the court has'" subject matter jurisdiction, and "it is the duty of a court to raise and determine such jurisdictional question even if the parties fail to do so." *Lira v. Billings*, 196 Kan. 726, 729, 414 P.2d 13 (1966). And the parties cannot vest an appellate court with jurisdiction by agreement, failing to object, or waiver. See *Labette Community College v. Board of County Commissioners*, 258 Kan. 622, 626, 907 P.2d 127 (1995).

Because standing is jurisdictional, it can even be raised for the first time on appeal. *Mid-Continent Specialists, Inc. v. Capital Homes, L.C.*, 279 Kan. 178, 186, 106 P.3d 483 (2005). And an appellate court can generally determine the issue, especially when the issue arises during an appeal related to a motion to dismiss, because it presents a question of law. See *Gannon*, 298 Kan. at 1122-23 (discussing burden at various stages of proceeding); *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013) (stating that standing presents question of law).

When a question of standing is raised, the party asserting the claim—here, Baker—has the burden to establish standing requirements. *Gannon*, 298 Kan. at 1123. In bringing a KORA claim, Baker must establish both (1) any statutory standing requirements imposed by KORA and (2) the traditional requirements of standing. *Sierra Club*, 298 Kan. at 29; *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112,

Syl. ¶ 2, 307 P.3d 1255 (2013); see also *Hunter Health Clinic v. WSU*, 52 Kan. App. 2d 1, Syl. ¶ 3, 362 P.3d 10 (2015) (to establish standing under KORA, a party must satisfy both statutory and traditional standing requirements).

Baker's statutory standing is obvious. KORA broadly specifies that *any person* can seek access to public records, and he or she does not have to explain a purpose for making the request. K.S.A. 45-218(a) ("All public records shall be open for inspection by any person, except as otherwise provided by this act, and suitable facilities shall be made available by each public agency for this purpose."); *State ex rel. Stephan v. Harder*, 230 Kan. 573, 585, 641 P.2d 366 (1982) ("The Kansas act places no burden on the public to show a need to inspect, and requires no particular motives or reasons for inspection."). So, under KORA's command, public records must be accessible for inspection by any member of the public, even if the inspection request is motivated by mere curiosity, unless the public agency can invoke an explicit exception.

KORA confers jurisdiction "to enforce the purposes of this act with respect to such records, by injunction, mandamus, declaratory judgment or other appropriate order, *in an action brought by any person*, the attorney general or a county or district attorney." (Emphasis added.) K.S.A. 2020 Supp. 45-222(a). And our Legislature has declared KORA's provisions "shall be liberally construed and applied to promote [its] policy." K.S.A. 45-216(a). Baker's lawsuit is designed to promote the policy of open records. K.S.A. 45-216(a) ("It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act."); cf. *Hunter Health Clinic*, 52 Kan. App. 2d at 9 (noting that KORA places the broad term "any person" in a specific context—a person seeking to enforce its purposes; holding there is no statutory standing to advocate blocking an agency from releasing records claimed to be private). Baker has statutory standing.

10

Where Baker runs into difficulty is in convincing us he meets traditional standing requirements now that he has the recordings. Under those requirements, he must establish "a personal interest in a court's decision and that he . . . personally suffers some actual or threatened injury as a result of the challenged conduct." *Sierra Club*, 298 Kan. at 33. The injury must be particularized in that it must affect the plaintiff in a "'personal and individual way.'" 298 Kan. at 35 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 [1992]).

When Baker filed this lawsuit, these requirements were satisfied. He suffered a cognizable injury:  He requested access to specific audio recordings of court hearings and the court denied it. See *San Juan Agric. Water Users Ass'n v. KNME-TV*, 150 N.M. 64, 257 P.3d 884, 893-94 (2011) (under New Mexico law all persons may inspect public records; when a person requests records and whose request is wrongfully denied, that person suffers a cognizable injury in fact and that injury is caused by the public entity's failure to provide the records). Moreover, the records custodian's challenged conduct—denying access to the recordings—was the direct cause of Baker's injury.

But the facts supporting the basis for standing can change as litigation progresses. And because of changed circumstances, a party can have standing as a lawsuit begins but lose it before the case is resolved. See *Ternes v. Galichia*, 297 Kan. 918, 921-22, 305 P.3d 617 (2013) ("party must have an ongoing interest in the dispute sufficient to establish concrete adverseness"); *Board of County Commissioners v. Bremby*, 286 Kan. 745, 764, 189 P.3d 494 (2008) (petitioner with life estate alleged sufficient facts to establish standing, but district court on remand should determine whether petitioner still had justiciable interest if petitioner had in fact died and estate no longer held interest in property). The question we confront is whether the fact Baker received the recordings left him without a stake in the request for relief—that is, now that he has the recordings he

sought does he "suffer[] some actual or threatened injury as a result of the challenged conduct." *Sierra Club*, 298 Kan. at 33.

To make this assessment, we must examine the injuries and remedies Baker has preserved at the appellate stage of the proceeding. Before the Court of Appeals, he continued to seek attorney fees and, because of the de facto and ongoing policy, either a declaratory judgment or an injunction. When this suit began, there was little question he had standing. Even after he received the recordings, he asserted he was entitled to attorney fees, which under this court's precedent potentially placed the legal question about KORA's application at issue. *Willis v. Kansas Highway Patrol*, 273 Kan. 123, 41 P.3d 824 (2002), a case the dissent cites but no party argued, establishes how such a claim may serve as the basis for standing to have an appellate court review both the fee claim and the claim for prospective relief in the form of a declaratory judgment or an injunction.

But Baker did not base his mootness argument before the Court of Appeals on his attorney fee claim. Nor did he argue to us that he had standing because of that claim. Perhaps that is because courts often conclude that pro se attorneys cannot recover attorney fees. See *Kay v. Ehrler*, 499 U.S. 432, 435-38, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991) (pro se lawyer is not entitled to attorney fees in actions under 42 U.S.C. § 1988). This rule has been extended to claims under the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and other fee-shifting statutes. See, e.g., *Pietrangelo v. U.S. Army*, 568 F.3d 341, 344 (2d Cir. 2009); *Burka v. U.S. Dep't of Health and Human Servs.*, 142 F.3d 1286, 1288-90 (D.C. Cir.1998); *Ray v. U.S. Dep't of Justice*, 87 F.3d 1250, 1251 (11th Cir. 1996). Kansas appellate courts have recognized, but not resolved, the question. See, e.g., *In re Protest of Barker*, 54 Kan. App. 2d 364, 375, 398 P.3d 870 (2017) (declining to address whether attorney acting pro se could in Board of Tax Appeals proceedings).

12

The Court of Appeals alluded to the potential question as it began a substantive analysis of the merits of Baker's claim for attorney fee issue but did not address it or the question of standing. See *Baker*, 55 Kan. App. 2d at 485 ("Overlooking the fact that Baker has appeared pro se during all relevant proceedings below and continues to do so on appeal . . . " and then setting out legal standard). This unanswered question looms large if, as the dissent suggests, it is to be a hook for establishing standing.

We need not resolve it today, however, because it was not raised by Baker. Again, Baker has the burden to establish standing requirements. *Gannon*, 298 Kan. at 1123. And he has made no attempt, either before us or the Court of Appeals, to meet that burden by relying on his attorney fee claim.

Instead, Baker, in response to this court's request for additional briefing on standing and mootness, contends he can continue to seek a declaratory judgment or injunction because the Tenth Judicial District maintains its position that recordings of court proceedings are not subject to disclosure under KORA. He argues he and others could be subject to future infringements of their rights. For support Baker cites decisions like *Hajro v. U.S. Citizenship & Immigration Servs.,* 811 F.3d 1086, 1102-03 (9th Cir. 2016), in which federal courts have recognized two types of claims: "[A] *specific* FOIA request claim and a *pattern or practice* claim." Baker points out that, even though receipt of the sought-after public records can moot a specific claim, the party may still be able to argue a pattern and practice claim by invoking the mootness exception that the issue is capable of repetition.

But Baker ignores that these cases generally examine standing even after determining a pattern and practice claim is not moot or is subject to a mootness exception. The federal cases considering an exception to mootness—that is, cases

13

recognizing that mootness is subject to limited prudential considerations—build standing into the test of whether the exception applies. *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537 (7th Cir. 2005) (rejecting application of the capable-of-repetition-yet-evading-review exception to FOIA claim because plaintiff failed to establish he would "request additional documents and that the VA will again fail to produce them in a timely manner"); *OSHA Data/CIH, Inc. v. U.S. Dep't of Labor*, 220 F.3d 153, 168 (3d Cir. 2000) ("OSHA Data has the burden of meeting both parts of the following test: '[1] the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and [2] there was a reasonable expectation that the same complaining party would be subjected to the same action again.'"). In other words, in federal pattern and practice cases there is some overlap between the mootness exception and the element of standing that considers the likelihood of future harm by the policy or practice at issue. *Hajro* illustrates.

The *Hajro* appeal involved two claimants. One, an attorney, brought a pattern and practice FOIA claim asserting that he regularly sought his client's alien registration files and the United States Citizenship and Immigration Services routinely failed to provide the record within the time required under the statute. The second claimant was a lawful permanent resident whose naturalization application was denied. He sought his registration file, the agency did not timely respond, and he filed a lawsuit in which he made a specific FOIA claim and a pattern and practice claim. He argued he was entitled to a prospective remedy to prevent any potential future harm that could result from the agency failing to meet the statutory time requirements if he asked for his file as he pursued citizenship. But, while the suit was pending, he became a lawful citizen.

In considering if the two claimants had standing, the *Hajro* court set out the *Lujan* three-part inquiry for standing—the same three-part test often cited in Kansas: injury in fact, causation, and redressability. 811 F.3d at 1102 (quoting *Lujan*, 504 U.S. at 560); see

14

*Sierra Club*, 298 Kan. at 35 (quoting *Lujan*, 504 U.S. at 560 n.1). The *Hajro* court examined United States Supreme Court caselaw about standing when a plaintiff seeks an injunction and noted that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" 811 F.3d at 1107 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 [1974]). The *Hajro* court held that "[b]ecause FOIA's prescribed relief is injunctive or declaratory, generally a plaintiff alleging a pattern or practice claim under FOIA must also meet [a] future harm requirement." 811 F.3d at 1107.

The *Hajro* court then reframed the standing test in words relevant to a FOIA claim when the party seeks prospective relief, as Baker does here. The party seeking relief must allege and eventually establish that "(1) the agency's [open records] violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." 811 F.3d at 1103. See *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (plaintiff seeking declaratory or injunctive relief failed to show he was suffering an ongoing injury or faced an immediate threat of future injury).

Applying the three-part test to the two claims before it, which the court considered at the summary judgment stage, the *Hajro* court held genuine issues of material fact existed as to whether the attorney—rather than his clients or other attorneys—had a personal stake in the outcome of the pattern and practice claim. 811 F.3d at 1104-06. Turning to the second claimant, the lawful permanent resident, the court held the claimant had failed to establish standing to bring a pattern and practice claim. He had little reason to seek out his alien record again since he had been granted citizenship. The likelihood he would suffer future injury was thus remote, and his specific claim was

15

rendered moot when he succeeded in his citizenship appeal. The court remanded his claim with direction to dismiss it as moot. 811 F.3d at 1106-07.

Unlike *Hajro*, which reviewed the appeal under the summary judgment standard, this appeal arises from the district court's ruling on a motion to dismiss. Other federal decisions have applied the standing test to a motion to dismiss and have generally held the plaintiff must plead facts that are "sufficiently concrete for the Court to conclude that the plaintiffs are likely to be subjected to these alleged policies or practices in the future." *National Sec. Counselors v. C.I.A.*, 931 F. Supp. 2d 77, 94 (D.D.C. 2013).

For example, the National Security Counselors alleged they stood "'to continue to be harmed' because 'they regularly file FOIA requests with CIA and will continue to do so in the future.'" 931 F. Supp. 2d at 94. The court described these allegations as "generalized statements" that were not concrete enough to meet the requirement of alleging a likelihood of future injury. 931 F. Supp. 2d at 94. Likewise, a court held a plaintiff's allegation that he "'plan[ned] to file additional FOIA requests to the [defendant] in the future'" was too generalized to show standing to seek prospective relief in the form of a declaratory judgment. *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, 775 F. Supp. 2d 174, 181-82, 187 (D.D.C. 2011). In another case, although a plaintiff had standing to seek a remedy for a past injury, it failed to establish standing to seek a declaratory judgment when it merely cited to plans to file additional FOIA requests with the defendant in the future. *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 105-06 (D.D.C. 2007). See also *American Historical Association v. National Archives & Records Admin.*, 310 F. Supp. 2d 216, 228 (D.D.C. 2004) (holding allegation that will seek records in the future is too conjectural and speculative).

16

In contrast, in another appeal involving the National Securities Counselors, they alleged their 15 *pending* FOIA requests established standing for declaratory relief in *Nat'l Sec. Counselors v. C.I.A.*, 898 F. Supp. 2d 233 (D.D.C. 2012), *aff'd* 969 F.3d 406 (D.C. Cir. 2020). The court agreed, explaining: "Recent cases have clarified that, where a FOIA requester challenges an alleged ongoing policy or practice and can demonstrate that it has pending claims that are likely to implicate that policy or practice, future injury is satisfied." 898 F. Supp. 2d at 262. As this case illustrates, contrary to the argument of the dissent, enforcing the constitutional requirement of standing can coexist with a prudential view of mootness that makes room for hearing some cases even when a plaintiff's specific case becomes moot because of a change in circumstances.

Requiring a concrete likelihood of future harm reflects Kansas law. See *Sierra Club*, 298 Kan. at 33 ("To establish a cognizable injury, a party must establish a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct."). It is also consistent with the mootness rule in *State v. Roat*, 311 Kan. 581, 596, 466 P.3d 439 (2020), that an appeal be dismissed after changed circumstances render a case moot unless "leaving a judgment intact will affect vital rights of the parties." Failing to heed this caution would put us in the position of rendering an advisory opinion.

We need look no further than a case involving Baker to see how Kansas appellate courts have applied these principles.

*Baker v. City of Overland Park*, No. 101,371, 2009 WL 3083843 (Kan. App. 2009) (unpublished opinion), involved a request to enjoin the enforcement of a traffic ordinance. Baker had been ticketed for a driving infraction for unsafe passing while on a multiple lane divided highway. He defended the charge by arguing the municipal ordinance was unconstitutionally vague. The traffic court agreed and dismissed the

17

charge. Baker then filed a civil action seeking, among other relief, a declaratory judgment or an injunction prohibiting enforcement of the municipal ordinance. He argued he and others were at risk for future prosecution.

The Court of Appeals panel held the dismissal of the traffic charges mooted any claims related to Baker's past prosecution. 2009 WL 3083843, at *4. As to the ongoing and future controversy, the panel cited the traditional standing requirements and, after analysis, held Baker lacked standing to seek a declaratory judgment. The panel held that a plaintiff must "allege and/or demonstrate actual present harm *or* a significant possibility of future harm." 2009 WL 3083843, at *4. The panel noted that Baker argued those requirements should be relaxed when a plaintiff seeks declaratory judgment. But the panel rejected that notion because of the constitutional requirement that there be a justiciable controversy. 2009 WL 3083843, at *4.

Instead, it stated that Baker was required "[a]t the very least . . . to allege that he *presently* was driving multiple-lane divided roadways in Overland Park or that he *likely would be doing so in the near future*." But Baker had not done so, stating only that he and others were "'subject to further prosecutions.'" 2009 WL 3083843, at *5. The panel held this was insufficient, noting:  "The court need not, however, accept Baker's 'allegations of future injury which are overly generalized, conclusory, or speculative.' . . . Baker's bald assertion that he was subject to future prosecution was far too general." 2009 WL 3083843, at *5.

Baker has already received the records requested. As a result, the only possible judgment affecting vital rights of the parties would be one relating to prospective records requests. Baker recognized as much when he invoked federal pattern and practice caselaw to support continuing his appeal. But Baker makes only generalized, conclusory, or speculative allegations about possible future injury because of the Tenth Judicial

18

District's policy. The only concrete and particularized invasion of rights identified by Baker—either past or future—is the one instance that started this suit. He did not allege in his petition that he is likely to be subject to the Tenth Judicial District's allegedly illegal policy in the future. Nor did he allege he has a pending request or that he has ever made other such requests in his more than 20 years of practice in Kansas courts. See *State v. Lowe*, 238 Kan. 755, Syl. ¶ 4, 715 P.2d 404 (1986) ("A court has the power to take judicial notice of its own records."); Supreme Court Rule 208 (2020 Kan. S. Ct. R. 247); K.S.A. 60-409(b)(4).

Generally, it is the allegations in Baker's petition that would dictate the outcome of this appeal from the district court order dismissing the action based on the pleadings. K.S.A. 2020 Supp. 60-212; *KNEA v. State*, 305 Kan. 739, 746, 387 P.3d 795 (2017) (standing is evaluated based on the stage of litigation and degree of evidence required at that stage); *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 268, 275 P.3d 869 (2012); *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006). While the circumstances that cause a change in standing occurred after the petition was filed and during discovery, he did not seek to amend his petition to add any allegation. At most, he belatedly maintains in his supplemental brief after we raised the issues of standing that he "will continue to ask for recordings of public hearings." Assuming we can or should consider this one sentence, it fails to carry the day for Baker. These few words are even more conjectural and hypothetical than those rejected in his prior suit about the traffic ordinance or by federal courts considering FOIA pattern and practice claims. E.g., *National Sec. Counselors*, 931 F. Supp. 2d at 94; *Quick*, 775 F. Supp. 2d at 181-82; *Citizens for Responsibility & Ethics in Washington*, 527 F. Supp. 2d at 105-06; *American Historical Association*, 310 F. Supp. 2d at 228.

We reject the dissent's concerns that public officials will simply provide records when a litigant nears success, then return to a pattern and practice of refusing records in

appropriate cases. The dissent's fears are unfounded because such actions are exactly why the pattern and practice doctrine was developed in FOIA cases. Moreover, those actions could support a claim under KORA in an appropriately pled case. Baker's simply is not such a case.

For these reasons, we conclude Baker has not met his burden to establish his standing, and thus both this court and the Court of Appeals lack jurisdiction over this appeal.

Appeal dismissed.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

* * *

BILES, J., dissenting: The majority side-steps a very real question of public importance by effectively overruling a subset of our case-or-controversy caselaw permitting courts in limited circumstances to decide issues that may be considered moot. I view this not only as poor legal precedent, but its result here is nothing less than an avoidance of our duty to safeguard this state's steadfast promise to maintain an open government. For these reasons, I dissent.

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 117,989 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

20

Since its inception, the Kansas Open Records Act's purpose has been "exceedingly clear: To subject to public view and scrutiny all of those records which the law requires public officials to keep." *State ex rel. Stephan v. Harder*, 230 Kan. 573, 580-81, 641 P.2d 366 (1982) ("Sunshine is the strongest antiseptic—its rays may penetrate areas previously closed."). In keeping with this, our Legislature declares the Act's provisions "shall be liberally construed and applied to promote such policy." K.S.A. 45-216(a). In this case, Linus Baker simply asks whether that law allows him to listen to audio recordings of open court proceedings made, maintained, or kept by the Tenth Judicial District of the State of Kansas. The majority says Baker is not entitled to an answer.

Instead, the majority holds Baker lost legal standing to ask his question because two recordings were begrudgingly produced during the discovery phase of this lawsuit, while the case was in the district court, even though the records custodian steadfastly adheres in this court to a legal position that the law does not require public inspection of these recordings. And to achieve its desired end, the majority casts off our previously recognized distinction between the concepts of standing and mootness. As a practical matter, this aspect of the majority's holding overrules our most recent decision declaring non-mootness a prudential requirement that does not inflexibly destroy jurisdiction. See *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020) ("Both the history of the mootness doctrine in Kansas, with the law developing on a prudential basis independent of federal analysis, and the problem of exceptions to the jurisdictional basis that inheres in the federal constitutional reasoning, lead us to conclude that the better approach is to consider mootness a prudential doctrine.").

We can address the legality of the Tenth Judicial District's public records policy under our well-recognized exceptions to Kansas' prudential mootness doctrine for issues capable of repetition and of public importance. Notably, the parties urge us to do so. I would further hold these audio recordings are plainly subject to public disclosure under

21

the Act. And I would add that latter conclusion is not anywhere near a close call. The majority simply avoids it.

THE COURT'S JURISDICTION TO ANSWER THE OPEN RECORDS QUESTION

To present a case or controversy justiciable by Kansas courts, a legal dispute "must satisfy four elements: (1) the plaintiff must have standing; (2) the issue raised cannot be moot; (3) the issue must be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (4) the issue cannot present a political question." *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015). Standing requires a party to satisfy both statutory and "traditional or common-law standing" requirements. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 461, 447 P.3d 959 (2019).

The majority correctly concludes Baker's statutory standing under the Act "is obvious." Slip op. at 10. Its problem is with the parallel concern for traditional standing. And for this, a party must show a cognizable injury and establish a causal connection between the injury and the challenged conduct. To show a cognizable injury, the party must establish a personal interest in a court's decision, and that they personally suffer some actual or threatened injury as a result of the challenged conduct. *Creecy*, 310 Kan. at 461. "'A justiciable controversy has definite and concrete issues between the parties and "adverse legal interests that are immediate, real, and amenable to conclusive relief."'" *Kansas Bldg. Indus. Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015). From my vantage point, Baker satisfies this test as well.

It is undisputed Baker suffered an actual legal injury because he was denied access to the recordings he sought under the Act. And there is a plain causal connection between that denial and the records custodian's actions because she denied him access under a blanket policy preventing any public access to these open court recordings. The legal

22

issue cannot be more concrete—Baker requested specific recordings and the custodian refused him access as is her customary practice. This makes the remaining legal question a simple one: does the Act allow the custodian to keep denying the public the right to listen to these recordings?

The majority's worry is that the two recordings Baker specifically requested were provided to him during litigation discovery while at the district court. This, they argue, effectively foreclosed the possibility that a judgment in Baker's favor can personally benefit him. But the fact Baker received these recordings does not change the reality that his legal injury occurred when he requested them in September 2015 and the custodian denied his request. And both argue the law is on their side. Worse yet, the custodian brazenly insists she will continue to deny any other such requests by anyone else. The custodian's then-counsel made that point all too clear when he explained while giving Baker the two recordings: "These [recordings] are provided as a response to your discovery request only, *and not as an admission to the allegations and claims in your petition*." (Emphasis added.)

The majority's decision today sanctions what amounts to a self-manipulating loophole for public agencies to avoid any practical long-term legal precedent under our public records law. Like Lucy in the cartoon series, dodgy government officials will be able to avoid a bad legal outcome by simply pulling the football away from Charlie Brown at the last possible minute. And this scenario can just repeat itself to stop inconvenient litigation by concerned citizens under the guise of creating an instant lack of traditional standing while preserving an illegal policy that denies the public access to their government's records. This is not in keeping with the openness promised by our public records laws to the citizens of our state. *Harder*, 230 Kan. at 580-81.

23

But this contrivance can be avoided squarely within our existing mootness jurisprudence. See *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 291, 807 P.2d 664 (1991) ("'The rule that when it appears by reason of changed circumstances between the commencement of an action and the trial thereof, a judgment would be unavailing as to the real issue presented, the case is moot and judicial action ceases, is not only applicable to actions seeking to enforce common-law remedies, but is equally applicable to actions under our declaratory judgment statute'"); see also *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980) ("One commentator has defined mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation [standing] must continue throughout its existence [mootness].' Monaghan, Constitutional Adjudication:  The Who and When, 82 Yale L.J. 1363, 1384 [1973]."). An appeal may be dismissed as moot when it "'clearly and convincingly appears that the actual controversy has ceased and the only judgment which could be entered would be ineffectual *for any purpose*.'" *Roat*, 311 Kan. at 594.

We recently reconciled our mootness doctrine caselaw against the problem of allowing exceptions to the jurisdictional ground that exists as an essential attribute in the federal jurisprudence. And we noted our legal principles developed on a prudential basis independent of that federal analysis, so the logical approach in our state was to continue considering mootness to be a prudential doctrine. *Roat*, 311 Kan. at 590. That is, when a mootness problem arises, a court may retain jurisdiction over the case if it raises "'issues that are capable of repetition and present concerns of public importance.'" 311 Kan. at 590; see also *City of Coffeyville v. International Brotherhood of Electrical Workers, Local No. 1523*, 270 Kan. 92, 94, 11 P.3d 1164 (2000) (recognizing exceptions to our mootness doctrine).

But by applying traditional standing concepts to a mid-litigation change in circumstances, as in Baker's case, the majority now abolishes this prudential mootness doctrine, effectively overruling *Roat* without even acknowledging it is doing so. And the parties cite no Kansas precedent when a litigant injured by the challenged conduct lost standing while a case was pending just because the actors of the challenged conduct voluntarily pause their misconduct. Worse yet, the cases the majority cites do not help its analysis under the circumstances presented here, i.e., *Ternes v. Galichia*, 297 Kan. 918, 921-22, 305 P.3d 617 (2013), and *Board of County Commissioners v. Bremby*, 286 Kan. 745, 764, 189 P.3d 494 (2008). Let's consider each more carefully.

In a parenthetical, the majority partially quotes a sentence from *Ternes*, the full text of which reads:  "A corollary of standing is that *the opposing party* must have an ongoing interest in the dispute sufficient to establish concrete adverseness." (Emphasis added.) *Ternes*, 297 Kan. at 921-22. But *Ternes* is inapposite. It held only that a law firm lacked standing to intervene to continue litigating a personal injury claim on behalf of a former client who no longer wanted to pursue it. The law firm lacked standing, not because it somehow lost it, but more traditionally because it "did not suffer an injury from any action on the part of the defendant, [it had] no injury that is redressable by a favorable ruling against the defendant." 297 Kan. at 922. The *Ternes* court concluded the law firm lacked standing because it could not pursue any claim on remand, even if it could prevail on appeal. In other words, any favorable ruling would not redress its claimed injury. 297 Kan. at 924-25.

In *Bremby*, the court addressed a landfill permit applicant's contention that a landowner who opposed the permit lost standing because he only had a life estate in the affected property and died during the appeal. The court remanded the case to the district court to determine whether the estate still had a "cognizable interest in the outcome." *Bremby*, 286 Kan. at 764. The case's holding nevertheless does not stand for a proposition

25

that a party may later lose traditional standing after standing is established at the case's outset. When remanding the case, the *Bremby* court merely pointed out the district court should consider the fact the landowner died after filing the petition since he only had a life estate in the property. See 286 Kan. at 764 (holding the landowner "should not be dismissed from the case for lack of standing on the basis of the petition alone, though the district court may determine during the course of the case that his estate no longer has a cognizable interest in the outcome").

This brings us to the majority's incomplete treatment of Baker's claim for attorney fees under K.S.A. 2020 Supp. 45-222(d), which the Act expressly authorizes for private citizens when they must go to court to gain access to public records withheld by recalcitrant public officials. Baker had that statutory claim before the district court and the Court of Appeals, so there should have remained an actual case or controversy that preserved standing before those courts—unless this statutory claim also disappeared when the two recordings were produced during district court discovery. The majority avoids resolving that question too, although it tries to cast shade by suggesting pro se litigants like Baker can't recover for their time under the Act. Slip op. at 13.

The majority discusses *Willis v. Kansas Highway Patrol*, 273 Kan. 123, 41 P.3d 824 (2002), and tries to disassociate that case from Baker's litigation. In *Willis*, our court considered whether a district court erred by declining to issue a writ of mandamus to "comply with the law and honor [plaintiff's] request for access to public records now and in the future," even though the court ordered the specific record at issue released and the plaintiff received it. 273 Kan. at 125. But the *Willis* plaintiff also sought attorney fees and that required the court to decide whether the agency exercised good faith in denying the records and whether there was a reasonable basis in fact or law to deny the records request in the first place. 273 Kan. at 133-34 (citing K.S.A. 45-222[c]). Those are the same questions this litigation should answer, but the majority brushes them aside.

26

The majority avoids considering *Willis'* holding, arguing Baker did not cite *Willis* to the Court of Appeals when the panel considered mootness. Slip op. at 12. But so what? The issue now is jurisdiction, which this court raised on its own motion. And the majority should still have to decide if the attorney fee claim presented a legally viable case or controversy before the Court of Appeals when that issue was before that panel. Otherwise, how could the majority hold the Court of Appeals lacked jurisdiction to consider Baker's appeal when his statutory claim remained pending there? The majority seems to recognize this by hinting that Baker's fee claim *might* fail because he is acting pro se, even though he is a licensed member of the Kansas bar. Slip op. at 13. ("This unanswered [attorney fee] question looms large, if, as the dissent suggests, it is to be a hook for establishing standing."). To extend the majority's analysis to the Court of Appeals proceedings, as it does, we need to know the answer to that aspect of the claim or controversy question. But we don't.

The majority cryptically claims it need not resolve the attorney fee claim as a jurisdictional "hook" because Baker did not raise *Willis* as supporting authority. But the *Willis* precedent simultaneously answers the question posed as it relates to the *Baker* panel's appellate jurisdiction and reinforces a central safeguard to the statutory rights our Legislature declares "shall be liberally construed and applied to promote such policy [that] public records shall be open for inspection by any person unless otherwise provided by this act." K.S.A. 45-216(a). So the only way to decide if the Court of Appeals had jurisdiction would be to confront *Willis* directly and decide whether Baker's attorney fee claim somehow evaporated when the recordings were produced. But the majority doesn't do that—it just hints at it and moves on to announce the Court of Appeals had no jurisdiction. Even worse, this rationale would logically seem to implicate the district court's jurisdiction as well, but the majority ignores that too. In the end, the potential implications from the majority's obscurity on these points for future litigation is

27

troublesome at best for open government advocates and should not be left to future guesswork given the public significance of these rights.

Regardless, we have applied mootness exceptions to resolve claims on the merits—even when they were not accompanied by other live claims for relief. See, e.g., *State v. Hilton*, 295 Kan. 845, 286 P.3d 871 (2012) (addressing criminal defendant's only claim on appeal, that sentencing court erred revoking probation, as an issue capable of repetition yet evading review and of public importance, even though defendant had completed serving the underlying sentences before case was heard on appeal); *Johnson County Commissioners v. Duffy*, 259 Kan. 500, 912 P.2d 716 (1996) (applying exception for issues capable of repetition and of statewide importance to decide otherwise moot question of whether Board of Tax Appeals had authority to order statewide reappraisal of agricultural property for a tax year). Indeed, this court has often interpreted the judicial power to hear and decide controversies as defined by Article 3, § 1 of the Kansas Constitution to extend to otherwise moot questions in limited circumstances—although exercising this power should be done "with caution and only upon due consideration of the wide variety of interests a party asserts." *Roat*, 311 Kan. at 591.

The majority's final attack focuses on Baker's argument that he still has standing to pursue declaratory and injunctive relief. In *Hajro v. U.S. Citizenship and Immigration Services*, 811 F.3d 1086 (9th Cir. 2016), the United States Court of Appeals for the Ninth Circuit explained the differing case-or-controversy requirements for Freedom of Information Act claims challenging wrongful withholding of specific documents, as opposed to those challenging an agency "pattern or practice":

> "We clarify that the Article III requirements for a specific FOIA request claim and a pattern or practice claim differ from each other. We have recognized two separate claims that complainants can bring against an agency under FOIA. The first is a suit

28

where a plaintiff attacks a specific agency action for (1) 'improperly' (2) 'withheld' (3) 'agency records.' For specific FOIA request claims, after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied.

"A FOIA requester may also assert a FOIA pattern or practice claim—a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.' For example, we have recognized a pattern or practice claim for unreasonable delay in responding to FOIA requests.

"We now clarify . . . that where a plaintiff alleges a pattern or practice of FOIA violations and seeks declaratory or injunctive relief, regardless of whether his specific FOIA requests have been mooted, the plaintiff has shown injury in fact if he demonstrates the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice. In other words, a pattern or practice claim is not necessarily mooted by an agency's production of documents. [Citations omitted.]" 811 F.3d at 1102-03.

After concluding an individual "lost standing" to pursue a pattern and practice claim when facts developed during the litigation that made future harm unlikely, the Ninth Circuit found the individual's "pattern or practice claim *moot*" and remanded the case with directions to "dismiss [the individual's] claim *as moot*." (Emphasis added.) 811 F.3d at 1093, 1102.

Under the *Hajro* rubric, one might think, given this litigation's developments, that Baker may not have adequately alleged a future harm necessary to seek declaratory or injunctive relief against continuing enforcement of the existing government policy against public inspection of open court recordings. But it must be remembered he had standing when he filed his lawsuit because it is undisputed the custodian denied him

29

access to the specific recordings he first asked for under the same policy that remains in place now because the majority avoids deciding that policy's legality.

Even so, Baker did seek in his original petition an "appropriate order requiring the Tenth Judicial district to provide access to and produce copies of the audio recordings in the electronic format requested." In other words, he asked to litigate whether the custodian wrongfully withheld access to the particular recordings he first requested under an official policy that still bars public access. And although Baker's initial request may be rendered moot because of the custodian's discovery production, this does not mean our court is powerless to continue the analysis to decide whether the Tenth Judicial District's continuing "official" policy violates the law.

After all, the Act broadly specifies that *any person* can seek access to public records, and he or she does not even have to explain a purpose for making the request. K.S.A. 45-218(a) ("All public records shall be open for inspection by any person, except as otherwise provided by this act, and suitable facilities shall be made available by each public agency for this purpose."); *Harder*, 230 Kan. at 585 ("The Kansas act places no burden on the public to show a need to inspect, and requires no particular motives or reasons for inspection."). So under the Act's command, public records must be accessible for inspection by any member of the public, even if the inspection request is motivated by mere curiosity, unless the public agency can invoke an explicit exception. And this robust right to ensure open government carries with it the statutory promise of judicial muscle to enforce it.

Baker's lawsuit clearly is designed to promote the statutory policy of open records and government scrutiny. K.S.A. 45-216(a) ("It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act."); cf. *Hunter Health Clinic v. Wichita State University*, 52 Kan.

30

App. 2d 1, 9-10, 362 P.3d 10 (2015) (noting the Act places the broad term "any person" in a specific context, i.e., a person seeking to enforce the Act's purposes; holding there is no statutory standing to advocate blocking an agency from releasing records claimed to be private). And Baker alleges the judicial district's records custodian perpetuates an unlawful policy of denying access to all recordings of open court proceedings. He further asserts in his appellate briefing that he "will continue to ask for recordings of public hearings and [the custodian] will continue to deny those requests." Yet the majority treats his declaration as untimely and self-serving, even though it is consistent with his initial pleading in which he alleged the custodian maintains this illegal policy and requested judicial relief against its continuation.

For these reasons, I would hold the panel properly invoked the mootness exceptions for legal issues capable of repetition and of public importance. *Baker v. Hayden*, 55 Kan. App. 2d 473, 477, 419 P.3d 31 (2018).

WITHHOLDING THESE RECORDINGS VIOLATES THE ACT

Moving to the merits, the records custodian argues the panel erred because the recordings can be withheld because of (1) Supreme Court Rule 362 (2020 Kan. S. Ct. R. 422), which she claims "establishes that audio recordings are not the transcript but are the equivalent of the reporters' notes," and (2) K.S.A. 2020 Supp. 45-219(a) (limiting rights to copy certain records). I would hold the panel correctly concluded the custodian violated the Act. These recordings very plainly are public records that are not exempt from disclosure. The custodian's arguments to the contrary lack merit. And I would add that the custodian's declared intention to continue this policy perpetuates the illegality.

31

*Standard of review*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 308 Kan. 145, 149, 432 P.3d 647 (2019). Similarly, how a particular exemption under the Act is applied is a question of law over which appellate courts have unlimited review, with the burden of proving an exemption's applicability on the custodian opposing disclosure. *Wichita Eagle and Beacon Pub. Co., Inc. v. Simmons*, 274 Kan. 194, 209, 50 P.3d 66 (2002). Underlying these principles is our long-standing recognition that "[b]y statutory decree, we are to liberally construe and apply [the Act] to promote a policy of open inspection of public records." *Simmons*, 274 Kan. at 215.

Statutory construction principles apply as well to interpretations of Kansas Supreme Court rules. If a rule's language is clear, courts are bound by that rule's language. *Kansas Judicial Review v. Stout*, 287 Kan. 450, 460, 196 P.3d 1162 (2008).

*These recordings are "records" subject to the Act.*

Although there are specific exceptions, the Act defines "public record" as "*any recorded information, regardless of form, characteristics or location, which is made, maintained or kept by or is in the possession of*" any "public agency." (Emphasis added.) K.S.A. 2020 Supp. 45-217(g)(1)(A). Before this court, the custodian strains to have us read together Supreme Court Rule 362 and Rule 1001(e)(8) (2020 Kan. S. Ct. R. 617) ("No video, photograph, audio reproduction, or other electronic communication of a court proceeding will affect the official court record of the proceeding for purposes of appeal or otherwise."). By looking at both rules, the custodian claims to see a way to characterize the judicial district's audio recordings of open court proceedings as simply aids for court reporters when preparing transcripts at the public's expense. Presumably this usage would

32

somehow remove the recordings from the "public records" domain, but it obviously does not. The Act's plain language contradicts this contention.

The Act does not distinguish between "public record" and "official court record." It defines public records as including any recorded information made, maintained, or kept by or in the possession of any public agency, as defined elsewhere in the Act. See *Simmons*, 274 Kan. 194, Syl. ¶ 4 ("[A]ny nonexempt document, computer file, or tape recording in the possession of a public agency is subject to public disclosure under [the Act]."); *Harder*, 230 Kan. 573, Syl. ¶ 4 ("Computer tapes which contain records required by law to be kept and maintained by state agencies are 'official public records.'"). There is no other way reasonably to read K.S.A. 2020 Supp. 45-217(g)(1)(A). Unquestionably, the audio recordings at issue are "recorded information" that are both "made" by and "in the possession of" the Tenth Judicial District.

The Act, also subject to specific exceptions, defines "[p]ublic agency" in K.S.A. 2020 Supp. 45-217(f)(1) ("[T]he state or any political or taxing subdivision of the state or any office, agency or instrumentality thereof, or any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state."). And the Tenth Judicial District is a political subdivision of the state, created by legislative enactment. See K.S.A. 4-211 ("The county of Johnson shall constitute the 10th judicial district."); *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, 954, 425 P.3d 290 (2018) ("[The Act] explicitly includes instrumentalities of political and taxing subdivisions of the state in its definition of public agencies.").

Taken together, these statutory provisions mean the Tenth Judicial District is a public agency as defined by the Act, so any recorded information, regardless of its form, that is made, maintained, or kept by the district is a "[p]ublic record" under K.S.A. 2020

33

Supp. 45-217(g)(1). See Supreme Court Rule 3.01(a)(3) (2020 Kan. S. Ct. R. 19) (the court record consists of "any other court authorized record of the proceedings, including an electronic recording"). Without question, the audio recordings of open court proceedings made, maintained, or kept by the Tenth Judicial District are public records subject to the Act.

*Inspection does not violate Supreme Court Rule 362.*

The next step is to decide whether the official custodian for these public records can meet her burden to establish the recordings are excluded by some provision in the Act. See K.S.A. 45-218(a) ("All public records shall be open for inspection by any person, except as otherwise provided by this act."); *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, Syl. ¶ 3, 815 P.2d 66 (1991) ("[The Act] does not allow an agency unregulated discretionary power to refuse to release information sought by the public."). The custodian argues the recordings are specifically exempt from disclosure under Rule 362. This is plainly wrong.

In pertinent part, K.S.A. 2020 Supp. 45-221 provides,

"(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:

(1) *Records the disclosure of which is specifically prohibited or restricted by* federal law, state statute or *rule of the Kansas supreme court* or rule of the senate committee on confirmation oversight relating to information submitted to the committee pursuant to K.S.A. 75-4315d, and amendments thereto, or the disclosure of which is prohibited or restricted pursuant to specific authorization of federal law, state statute or rule of the Kansas supreme court or rule of the senate committee on confirmation

34

oversight relating to information submitted to the committee pursuant to K.S.A. 75-4315d, and amendments thereto, to restrict or prohibit disclosure." (Emphases added.)

Rule 362 states:

"Written transcripts of electronic recordings shall be prepared by court personnel under the direction of the clerk of the district court. The person making the transcript shall certify under seal of the court that the transcript is a correct transcript of the specified proceedings as recorded. Upon request of counsel, the clerk of the district court shall make arrangements for counsel to review the electronic recordings of the case involved. The clerk may correct a transcript of recorded proceedings upon stipulation by counsel or upon order of the court." (2020 Kan. S. Ct. R. 422.)

The panel found the custodian's Rule 362 argument without merit. *Baker*, 55 Kan. App. 2d at 481 ("[W]e find no indication from the plain and unambiguous language used in [Rule 362] from which we can conclude that our Supreme Court intended to prohibit or restrict public access to electronically recorded hearings of open court proceedings."). I agree.

There is a simple decision-making progression embedded in the Act: once a record of information is determined to be made, maintained, or kept by a "public agency," that recorded information is a "public record" and must be open, unless otherwise specifically provided by the Act. K.S.A. 45-218(a). And under this progression, the records custodian shoulders the burden to prove disclosure "is *specifically prohibited or restricted* by . . . rule of the Kansas supreme court." (Emphasis added.) K.S.A. 2020 Supp. 45-221(a)(1). That specificity cannot be found in Rule 362.

There is not one word in Rule 362 prohibiting or restricting disclosure of these recordings, so just because litigation counsel in a particular case can review electronic

35

recordings does not mean—even implicitly—that the public can be denied access. For that, the Act demands specificity when a public records custodian tries to invoke K.S.A. 2020 Supp. 45-221(a)(1) to deny disclosure of a public record. And the custodian's burden to cite an explicit law is consistent with the Act's underlying purpose: "To subject to public view and scrutiny all of those records which the law requires public officials to keep." *Harder*, 230 Kan. at 581.

Rule 362 lacks the required language to support the custodian's denial of public access to the recordings. As the panel correctly observed, a rule about "court reporters that permits counsel to access electronic recordings to determine the accuracy of the prepared transcript stands in stark contrast to a broad rule enacted by the Kansas Supreme Court that specifically prohibits and restricts public access to all electronic recordings of proceedings under the [Act]." *Baker*, 55 Kan. App. 2d at 484. Likewise, I would hold Rule 362 does not prohibit or restrict the right to public inspection of audio recordings of open court proceedings that are made, maintained, or kept by a Kansas judicial district.

*Inspection does not violate K.S.A. 2020 Supp. 45-219(a).*

The custodian next contends K.S.A. 2020 Supp. 45-219(a) unambiguously exempts audio recordings from disclosure under the Act. It provides:

> "Any person may make abstracts or obtain copies of any public record to which such person has access under this act. If copies are requested, the public agency may require a written request and advance payment of the prescribed fee. *A public agency shall not be required to provide copies of radio or recording tapes or discs, video tapes or films, pictures, slides, graphics, illustrations or similar audio or visual items or devices, unless such items or devices were shown or played to a public meeting of the governing body thereof*, but the public agency shall not be required to provide such items

36

or devices which are copyrighted by a person other than the public agency." (Emphasis added.)

The custodian claims that since the law does not require her *to provide copies* of these recordings, it permits her *to withhold public access* to them as well. This seriously misconstrues the Act and suffers from the same strained reasoning as the custodian's misinterpretation of Rule 362. Allowing the public to listen to audio recordings is not the same thing as making copies of them.

As the panel correctly held, K.S.A. 2020 Supp. 45-219(a) "only refers to the public's *right to copy* the listed items and does not in any way prohibit the public's ability to inspect them." (Emphasis added.) *Baker*, 55 Kan. App. 2d at 484-85. The Act cannot be clearer in delineating the public's right to inspect public records from the agency's obligation to accommodate the possible copying of those records. Each of these statutory provisions operate independently from the other.

K.S.A. 45-218(a) specifies all public records must be open for inspection by any person, except as otherwise provided by the Act, and further requires public agencies to make "suitable facilities" available for this inspection. And the statute's remaining subsections all relate to inspection as well. But copying is covered in a separate statute, K.S.A. 2020 Supp. 45-219. Its subsection (a) permits any person to make abstracts or copies of public records themselves, or obtain copies of those records through the public agency that has them, with restrictions on that accommodation as spelled out. Among those restrictions, subsection (a) clarifies that for certain listed items, such as recordings, the agency's copying obligation is limited to circumstances when those specific items are shown in a public meeting unless they are also copyrighted by someone outside the agency. Even so, subsection (a) does not prohibit inspection or otherwise limit public access.

37

K.S.A. 45-218(a) requires the records custodian to allow inspection of electronic recordings and to make "suitable facilities" available for that purpose. Nothing hinges this disclosure requirement on whether the public agency might also be obligated to make a copy of the same item. K.S.A. 2020 Supp. 45-219(a) does not limit a person's right to inspect public records.

I would hold the recordings Baker sought access to are public records subject to disclosure under the Act, and that neither Supreme Court Rule 362 nor K.S.A. 2020 Supp. 45-219 justify the custodian's refusal to make them available. I would also hold the Tenth Judicial District's continuing policy of denying access to these recordings flagrantly violates the Act and must stop.

CONCLUSION

Baker's public records request presents an issue capable of repetition and is of public importance. It deserves a clear and emphatic resolution that ends this obviously illegal policy by the Tenth Judicial District. Baker pledges he "will continue to ask for recordings of public hearings." Good. The Tenth Judicial District's practice of nondisclosure of these recordings should be bludgeoned until it is abandoned or judicially neutered. Today's majority decision only puts off that reckoning. My concern in the meantime is that this holding will be seen as weakening the judicial resolve needed at times to ensure Kansans have the means to preserve an open government.

I would hold the district court erred by dismissing this case. And by re-casting dismissal now as an issue of traditional standing, the majority implicitly overrules Kansas caselaw considering dismissal for mootness as prudential, rather than jurisdictional. In the process, the majority opens a cavernous loophole for government officials to string

38

along those who would seek access to public records by permitting late-in-the-game disclosures to avoid adverse judicial precedent. This is not what the Act envisions.

For these reasons, I dissent.

ROSEN, J., and MICHAEL J. MALONE, Senior Judge, join the foregoing dissent.