No. 111,586

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HUNTER HEALTH CLINIC,
*Appellee*,

v.

WICHITA STATE UNIVERSITY,
*Appellee*,
and
WICHITA EAGLE and BEACON PUBLISHING COMPANY, INC.,
*Appellant*.

SYLLABUS BY THE COURT

1.

The issue of whether a party has standing to pursue a cause of action presents a question of law subject to unlimited review.

2.

Standing is a party's right to make a legal claim or seek judicial enforcement of a duty or right.

3.

To establish standing under the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq.*, a party must meet the traditional tests for standing and satisfy the statutory standing requirement.

1

4.

Any person whose request for public records has been denied or impeded has statutory standing to enforce the purposes of KORA by filing a cause of action in the district court of any county in which the records are located.

5.

Under KORA, it is the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by the act. KORA shall be liberally construed and applied to promote this public policy.

6.

An injunction provides an equitable remedy to a party for a legal wrong that gives rise to a cause of action.

7.

Under the facts of this case, the plaintiff did not have statutory standing to bring a cause of action under KORA seeking to enjoin the public agency from disclosing purportedly private records.

Appeal from Sedgwick District Court; FAITH MAUGHAN, judge. Opinion filed November 6, 2015. Reversed and remanded with directions.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellant Wichita Eagle and Beacon Publishing Company, Inc.

*Alan L. Rupe*, *Jessica Skladzien*, and *Jeremy K. Schrag*, of Lewis, Brisbois, Bisgaard & Smith, LLP, of Wichita, for appellee Hunter Health Clinic, Inc.

*Christopher M. Grunewald*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee Wichita State University.

2

*Maxwell E. Kautsch*, Kautsch Law, L.L.C. of Lawrence, for amici curiae Kansas Press Association, Inc.

Before PIERRON, P.J., BUSER and POWELL, JJ.

BUSER, J.:  This appeal addresses the following question:  Does a person who seeks to prevent a public agency from disclosing claimed private records have statutory standing to bring a cause of action under the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq.*? The Wichita Eagle and Beacon Publishing Company, Inc., (Eagle) presented a request for records to Wichita State University (WSU) under KORA. Upon learning of the request, Hunter Health Clinic (Hunter) brought a putative KORA cause of action to prevent WSU from releasing what it asserted were private Hunter records. After considering Hunter's standing under KORA to bring the lawsuit and the merits of Hunter's claims, the district court granted Hunter injunctive relief preventing WSU from disclosing what the court determined were private records relating to Hunter.

We conclude that Hunter did not have statutory standing to pursue its cause of action under KORA. Accordingly, we reverse the district court's judgment and orders and remand the case to the district court with directions to dismiss the petition.

FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the parties submitted this case to the district court based on stipulated facts. The stipulated facts relevant to our holding are summarized below.

The parties agreed that the plaintiff, Hunter, a not-for-profit corporation with a principal place of business in Sedgwick County, Kansas, is not a public agency under KORA. The defendant, WSU, is a Kansas state educational institution and a public

3

agency under KORA. The defendant, Eagle, is a Kansas for-profit corporation that publishes a general-circulation newspaper distributed throughout the state of Kansas.

Richard Muma is a former member and chair of Hunter's Board of Directors, and Jaya Escobar is a successor chair of Hunter's Board. Both individuals are also employees of WSU. Muma and Escobar used their WSU e-mail accounts to conduct correspondence regarding Hunter. Use of WSU e-mail accounts is governed by technology policies and procedures published by WSU.

On May 20, 2013, Kelsey Ryan, a reporter for the Eagle, sent a KORA request to WSU which stated in pertinent part:

> "Pursuant to the state open records law, Kan. Stat. Ann. Secs. 45-215 to 45-250, I write to request access to and a copy of emails to or from the account of Jaya Escobar . . . and Richard Muma . . . from August 31, 2012, to today that mention 'Hunter,' 'Hunter Health Clinic,' or 'the clinic.'"

According to a news article published in the Eagle, the newspaper is "'seeking the e-mails in connection with its reporting on financial troubles'" at Hunter.

In response to the Eagle's request, WSU collected the e-mails, 420 in total with 219 attachments, and provided them to Hunter. The parties stipulated that the collected e-mails did not relate to the function, activities, programs, operations, or administration of WSU.

On May 22, 2013, Hunter filed a lawsuit against WSU and the Eagle (petition). Hunter pled that the district court had "jurisdiction to enforce [KORA] . . . pursuant to K.S.A. 45-222." Hunter also asked the district court to issue "[a] declaratory judgment that (1) the records sought . . . are not public records within the meaning of [KORA] and

(2) the records sought . . . are excepted from disclosure pursuant to [KORA]." Hunter further asked the district court to permanently enjoin "WSU from providing access to and copies of . . . any and all" of the e-mails. Finally, Hunter asked the district court to issue a temporary restraining order, which the district court issued the same day.

WSU answered the petition by denying Hunter's claims for lack of knowledge. Nevertheless, WSU said it stood "ready to comply with [the] Order and determination of the [district court] relative to the [e]-mail records under consideration." WSU raised no affirmative defenses.

The Eagle answered Hunter's petition by admitting the district court "has subject matter jurisdiction over certain actions brought pursuant to [KORA]." The Eagle denied, however, that "this is such an action." In particular, the Eagle raised as a defense Hunter's lack of "standing to bring this action," specifically asserting the district court was "without subject matter jurisdiction."

The parties did not submit pretrial questionnaires, and the district court did not file a pretrial order. Instead, the parties arranged for submission of the case on stipulated facts via an e-mail exchange with the district court. The parties then submitted their legal arguments in written form.

Hunter presented its arguments in a "'Motion for Permanent Relief Pursuant to the Kansas Open Records Act'" (motion) and supporting memorandum of law. Hunter did not mention declaratory judgment in either the motion or the memorandum. Instead, Hunter requested "an order pursuant to K.S.A. 45-222(a)," the same section of KORA it had cited in its petition to establish the district court's jurisdiction. Hunter asserted it was proceeding "under [KORA], asking this Court to issue an order under K.S.A. 45-222 preventing [WSU] from disclosing to the . . . Eagle certain e-mails." Hunter also contended that "[t]he plain language of the KORA authorizes this action." Hunter

5

renewed its request for a permanent injunction, arguing it would succeed on the merits under KORA.

The Eagle responded by objecting to the form of Hunter's motion, alleging the filing was "somewhat at variance" with the e-mail agreement between the parties and the district court. In particular, the Eagle expressed concern that a ruling on a motion for injunction, as opposed to "a trial on stipulated facts" as the parties had supposedly agreed, would be an interlocutory order. The Eagle stated its "desire . . . that whatever order the Court enters . . . be a final judgment."

The Eagle then argued that Hunter did not have standing as a KORA plaintiff: "Hunter's action is not designed to promote the policy of open records; it is designed to do exactly the opposite—to *prevent* disclosure. It is therefore not an action that is authorized by K.S.A. 45-222(a)." In support, the Eagle noted: "Hunter cites no cases in which an action under KORA has been commenced by anyone other than the requester of records whose request has been denied."

In reply, Hunter stated it was "surprised that the Eagle would object to the form of the opening motion." Hunter asserted, without citation to its motion, that it had requested a declaratory judgment. But Hunter failed to argue declaratory judgment in its reply or even mention the remedy after this initial assertion.

For its part, WSU stated in its written submission that it "looks forward to guidance and instruction from the Court relative to its obligations in addressing this unique situation." WSU said it was "not in a position to object to the KORA request at issue here because the emails in question are not directly related to the 'function, activities, programs, operations, and/or administration of WSU.'" WSU assured the district court it would "follow the order of this Court or, if a negotiated resolution

6

between [Hunter] and [the Eagle] is reached, will cooperate to accommodate an appropriate and lawful construction of [KORA]."

On February 13, 2014, the district court issued its ruling from the bench. The district court ruled that Hunter had standing to pursue its petition because it had shown "a significant personal stake in the release of the requested e-mails." The district court, however, did not specifically address Hunter's statutory standing under KORA. After concluding that the e-mails were not part of the public record under KORA, the district court granted Hunter's motion and permanently enjoined WSU from disclosing them. The district court specified that its ruling was a final judgment. The Eagle filed a timely appeal.

STANDING

The central issue presented by this appeal is whether Hunter has standing to pursue its cause of action under KORA to prevent WSU from disclosing to the Eagle what Hunter claims are private records. Hunter relies on its common-law standing. On the contrary, the Eagle contends Hunter lacks the requisite statutory standing under KORA. WSU, now represented by the Attorney General in place of its own general counsel, has changed its position which it took before the district court and, for the first time on appeal, supports Hunter's legal contentions.

Our long-standing standard of review provides: "The issue of whether a party has standing in a judicial action . . . presents a question of law" subject to unlimited review. *Sierra Club v. Moser*, 298 Kan. 22, 29, 310 P.3d 360 (2013).

"Standing is 'a party's right to make a legal claim or seek judicial enforcement of a duty or right.' [Citation omitted.]" *Board of Miami County Comm'rs v. Kanza Rail-Trails*

7

*Conservancy, Inc.*, 292 Kan. 285, 324, 255 P.3d 1186 (2011). To determine whether Hunter had such a right, we must first identify the legal claim, duty, or right at issue.

Hunter petitioned the district court in part for a declaratory judgment, but it identified KORA as the basis for the district court's jurisdiction. Hunter then argued the matter as a KORA action, and the district court granted Hunter's motion, which did not mention declaratory judgment. Similarly, Hunter does not reference declaratory judgment in its appellate brief, and it did not urge that remedy at oral arguments. As a result, Hunter has abandoned any reliance on the declaratory judgment statute, K.S.A. 60-1701, in the present litigation. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011) (issues not briefed are deemed waived or abandoned on appeal).

Instead, as Hunter readily acknowledges on appeal, it "sued the Eagle and WSU under the KORA," repeating that it "brought this lawsuit under the KORA." Hunter also disputes the Eagle's position that "only the person who issues the KORA request can pursue legal action to enforce the KORA." Consequently, Hunter is clearly pursuing a putative KORA claim in this litigation.

Having identified the basis of Hunter's claim, we must consider both common-law standing and, if any, statutory standing under KORA. Hunter contends that common-law standing alone suffices in KORA actions. On the contrary, the Eagle claims that standing is "purely statutory" in a KORA action. We disagree with both parties. Kansas law provides that "[t]o have standing, a party must satisfy any statutory standing requirements *and* meet the traditional tests for standing." (Emphasis added.) *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, Syl. ¶ 2, 307 P.3d 1255 (2013).

With regard to common-law standing: "Generally, to demonstrate common-law or traditional standing, a person suing individually must show a cognizable injury and establish a causal connection between the injury and the challenged conduct." *Sierra*

8

*Club*, 298 Kan. at 33. Common-law standing is constitutionally required. See *Sierra Club*, 298 Kan. at 29 (common-law standing satisfies "the Kansas case-or-controversy requirement imposed by the judicial power clause of Article 3, § 1 of the Kansas Constitution"). Even if a party "meets the statutory requirements, it must also meet the second prong, satisfying the requirements under the common-law standard that is often referred to in our caselaw as the traditional standing test." 298 Kan. at 30.

The parties agree the district court ruled that Hunter established common-law standing. The parties also do not challenge this holding on appeal. For our purposes, then, we presume that Hunter has common-law standing to pursue a KORA claim.

The question then becomes: What, if any, statutory standing requirements are necessary to pursue a KORA claim?

We begin by stating the KORA procedure that should be followed when a public agency receives a request for access to the public record:

> "Each request for access to a public record shall be acted upon as soon as possible, but not later than the end of the third business day following the date that the request is received. If access to the public record is not granted immediately, the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection. If the request for access is denied, the custodian shall provide, upon request, a written statement of the grounds for denial. Such statement shall cite the specific provision of law under which access is denied and shall be furnished to the requester not later than the end of the third business day following the date that the request for the statement is received." K.S.A. 45-218(d).

Thus, KORA provides that when a public agency receives a request for records, it must decide whether the request is for access to the public record and, if so, whether an

exception applies. The public agency is bound by KORA when making its decisions. See *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 170, 815 P.2d 66 (1991). Given this statutory framework, it is not surprising that plaintiffs in prior KORA cases have claimed a public agency should release purportedly public records. See, *e.g.*, *Wichita Eagle & Beacon Publishing Co. v. Simmons*, 274 Kan. 194, 50 P.3d 66 (2002).

Hunter, however, claims that under KORA a public agency *should not* release records that are claimed to be *private.* Because Hunter seeks to prevent WSU from disclosing to the Eagle what it claims are private e-mails, Hunter maintains it is a KORA plaintiff based on K.S.A. 2014 Supp. 45-222, the statute which creates the KORA cause of action.

We will consider this statute next, and to the degree it is ambiguous, we will then consider it in the context of KORA as a whole. See *Cady v. Schroll*, 298 Kan. 731, 739, 317 P.3d 90 (2014) (only if a statute is ambiguous does a court resort to the canons of construction); *City of Topeka*, 297 Kan. at 1123 (the provisions of an act are considered in pari materia).

K.S.A. 2014 Supp. 45-222 provides:

"(a) The district court of any county in which *public records* are located shall have jurisdiction *to enforce the purposes of this act with respect to such records*, by injunction, mandamus or other appropriate order, *in an action brought by any person*, the attorney general or a county or district attorney.

"(b) In any action hereunder, the court shall determine the matter de novo. The court on its own motion, or on motion of either party, may view the records in controversy in camera before reaching a decision.

"(c) In any action hereunder, the court shall award costs and a reasonable sum as an attorney's fee for services rendered in such action, including proceedings on appeal, to be recovered and collected as part of the costs to the plaintiff if the court finds that the

10

agency's denial of access to the public record was not in good faith and without a reasonable basis in fact or law. The award shall be assessed against the public agency that the court determines to be responsible for the violation.

"(d) In any action hereunder in which the defendant is the prevailing party, the court shall award to the defendant costs and a reasonable sum as an attorney's fee for services rendered in such action, including proceedings on appeal, to be recovered and collected as part of the costs if the court finds that the plaintiff maintained the action not in good faith and without a reasonable basis in fact or law.

"(e) Except as otherwise provided by law, proceedings arising under this section shall be assigned for hearing and trial at the earliest practicable date.

"(f) The provisions of subsections (c) and (d) concerning the awarding of costs and attorney fees for services rendered during an appeal shall apply only to actions which are based on causes of action accruing on or after July 1, 2004." (Emphasis added.)

Hunter bases its statutory standing argument on the phrase, "any person," in K.S.A. 2014 Supp. 45-222(a). "At most," Hunter argues, "KORA imposes a statutory standing requirement that requires the plaintiff to be a 'person.'" Hunter concludes that because it is a legal person, it is a KORA plaintiff.

The phrase "any person" is undoubtedly broad, but KORA places it in a specific context: "The district court of any county in which *public records* are located shall have jurisdiction to enforce *the purposes of this act with respect to such records* . . . in an action brought by *any person*, the attorney general or a county or district attorney." (Emphasis added.) K.S.A. 2014 Supp. 45-222(a).

KORA defines "public records" at K.S.A. 2014 Supp. 45-217(g)(1)-(3). We will not parse that language because Hunter did not ask the district court to exercise jurisdiction over ostensibly public records. Instead, Hunter asked the district court to exercise jurisdiction over what it said were private records. But K.S.A. 2014 Supp. 45-222(a) does not create a cause of action to enforce the purposes of KORA with respect to private records. As a result, given this statutory language focusing on "public records,"

11

Hunter's claim of statutory standing to make a KORA claim to prevent disclosure of private records is not persuasive.

We read "the purposes of this act" in the same manner. K.S.A. 2014 Supp. 45-222(a). The purposes of KORA are shown by subsection (c), which awards costs to the "plaintiff if the court finds that the agency's *denial* of access to the *public record* was not in good faith and without a reasonable basis in fact or law. The award shall be assessed against the public agency that the court determines to be responsible for *the violation*." (Emphasis added.) K.S.A. 2014 Supp. 45-222(c). Thus, a violation under KORA may occur when a public agency denies access to the public record. As one commentator has observed: "Any person whose request for records *under the act* has been *denied or impeded* may bring an action in the district court of the county where the records are located." (Emphasis added.) Fredrickson, *Letting the Sunshine in*: *An Analysis of the 1984 Kansas Open Records Act*, 33 Kan. L. Rev. 205, 261 (1985). Hunter was not an entity or person whose request for records under the act, *i.e.*, the public record, has been denied or impeded. Hunter's request to the district court was to prevent WSU from disclosing purportedly private records. On this basis, Hunter again lacked statutory standing to make a KORA claim.

Moreover, assuming K.S.A. 2014 Supp. 45-222(a) is ambiguous, our reading of "any person" is consistent with the meaning of "any person" referenced throughout KORA. For example, "[*a*]*ll public records shall be open for inspection* by *any person*, except as otherwise provided by this act, and suitable facilities shall be made available by each public agency for this purpose." (Emphasis added.) K.S.A. 45-218(a). Likewise, "[u]pon request in accordance with procedures adopted under K.S.A. 45-220, *any person may inspect public records* during the regular office hours of the public agency." (Emphasis added.) K.S.A. 45-218(b). And, "[*a*]*ny person may make abstracts or obtain copies of any public records* to which *such person has access* under this act." (Emphasis added.) K.S.A. 2014 Supp. 45-219(a).

As these statutory provisions show, "any person" must be read in context. See *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014) (legislative intent is expressed in the language used). In both K.S.A. 2014 Supp. 45-222(a) and the KORA provisions just quoted, "any person" refers to persons seeking access to the public record, not to persons who would have the public agency deny access to claimed private records.

This understanding is confirmed by the civil penalty provision, K.S.A. 45-223(a):

> "Any public agency subject to this act that knowingly violates any of the provisions of this act or that *intentionally fails to furnish information* as required by this act shall be liable for the payment of a civil penalty in an action brought by the attorney general or county or district attorney, in a sum set by the court of not to exceed $500 for each violation." (Emphasis added.)

If Hunter is correct, the attorney general or county or district attorney could similarly sue to prevent a public agency from furnishing information. But if that were so, the legislature would not have limited the penalty to cases where the agency "intentionally fails to furnish" information. K.S.A. 45-223(a). The legislature would also have included a penalty for furnishing information contrary to KORA. The fact that the legislature penalized only failing to furnish information strongly indicates furnishing information is the only remedy available under KORA. If furnishing information is the only remedy available, then a person who does not want a public agency to furnish information is not a KORA plaintiff.

We hold that any person whose request for public records has been denied or impeded has statutory standing to enforce the purposes of KORA by filing a cause of action in the district court of any county in which the records are located. Under the facts of this case, however, Hunter did not have statutory standing to bring a cause of action

13

under KORA seeking to enjoin WSU from disclosing ostensibly private records to the Eagle.

Hunter briefs the public policy implications of our ruling. But the legislature has declared it to be "the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act." K.S.A. 45-216(a). The legislature also directed that KORA "shall be liberally construed and applied to promote such policy." K.S.A. 45-216(a). This legislatively determined public policy is a "significant departure from the previous law, the Kansas Public Records Inspection Act," which provided that only a "small number" of records were "open to public scrutiny." *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, 63, 734 P.2d 1083 (1987). "KORA, on the other hand, declares it to be the public policy of this state that public records shall be open for inspection by any person." 241 Kan. at 63. The legislature's intent was "to ensure public confidence in government by increasing the access of the public to government and its decision-making processes." *Data Tree v. Meek*, 279 Kan. 445, 454, 109 P.3d 1226 (2005). Hunter's construction of KORA does not promote the public policy as determined by the legislature.

We note there is a dearth of Kansas caselaw addressing this specific issue. The Eagle, however, cites an unpublished Kansas federal case which is supportive of our reading of KORA. In *Reliastar Life Ins. Co. v. Warrior*, 2007 WL 2669558 (D. Kan. 2007), a party in a dispute with an insurance company sought criminal investigative records held by the Wyandotte County District Attorney's office. The District Attorney's office was willing to release the records under a protective order, but the insurance company argued the records were not subject to release under KORA. United States District Magistrate Judge David J. Waxse held the insurance company could not rely on KORA:

"In this case, it is the records custodian of the Wyandotte County District Attorney's office who has the discretion, under K.S.A. 45-221(a)(10), to determine whether to disclose the criminal investigation records at issue. If the Wyandotte County District Attorney's office makes the decision not to disclose such records, then the party requesting to inspect the records may bring an action under [KORA] to seek disclosure of such records. If a court were to find that the enumerated conditions of subsection (a)(10) warranted disclosure, the court would then have the power to require the District Attorney's office to make the records available. On the other hand, if the District Attorney's office makes a decision to produce or make the records available for inspection, it may do so, and nothing in K.S.A. 4[5]-221(a)(10) *prohibits* the District Attorney's office from doing so.

"Here, the Wyandotte County District Attorney's office has apparently agreed to disclose the investigative file in response to [the party's] subpoena, subject to an appropriate protective order. As the agency has made that decision, [KORA] cannot be used by [the insurance company] to prevent that disclosure." 2007 WL 2669558, *5-6.

We agree with this reading of KORA. To use a clichéd formulation, KORA is a sword to obtain access to the public record, not a shield to prohibit access to private records. Hunter asked the district court to do the latter. Since Hunter did not have the right under KORA to make such a legal claim or to seek judicial enforcement of such a duty or right, it lacked the requisite statutory standing.

Hunter presents an alternative argument: "Even if the Eagle could somehow establish that Hunter has no statutory standing to bring its claims under KORA . . . the district court's injunction would still be proper pursuant to K.S.A. 60-901 *et seq*.," the statutes governing injunctive relief. The Eagle replies: "An injunction is a *remedy*, not a cause of action. It cannot exist in a vacuum but must be tied to a valid cause of action, and the plaintiff must have standing to assert that cause of action."

Our research located cases holding an injunction does not stand alone but is a remedy available upon a successful cause of action. See *Moore v. Walter Coke*, *Inc.*, 294

15

F.R.D. 620, 632 (N.D. Ala. 2013); *Pinnacle Min. Co., LLC v. Bluestone Coal Corp.*, 624 F. Supp. 2d 530, 539 (S.D.W. Va. 2009); *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. 2011). As one authority on federal procedure states: "[P]ermanent injunctions ordinarily may be rendered only after a valid adjudication of the merits of the action." 13 Moore's Federal Practice § 65.05[3] (3d ed., 2015).

Turning to Kansas law, an injunction is merely "an order to do or refrain from doing a particular act." K.S.A. 60-901. Thus it is "an equitable remedy designed to prevent irreparable injury by prohibiting or commanding certain acts." *Nat'l Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City*, 272 Kan. 1239, Syl. ¶ 2, 38 P.3d 723 (2002). A remedy is, of course, available only to a party who can show a wrong. See *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 37, 271 P.3d 1269 (2012) ("A party cannot obtain an equitable remedy unless there is a wrong for which a remedy is necessary."). And a wrong, here, means a legal wrong, *i.e.*, one giving rise to a cause of action. See *Greenlee v. Board of Clay County Comm'rs*, 241 Kan. 802, 805, 740 P.2d 606 (1987) ("official misconduct can constitute an individual wrong only if the duty is owed to the party seeking redress"); *Thompson-Hayward Chem. Co. v. Cyprus Mines Corp.*, 8 Kan. App. 2d 487, 492, 660 P.2d 973 (1983) ("A cause of action arises from the wrong done and not from the character of relief sought or from the measure of compensation.").

We conclude that in Kansas an injunction provides an equitable remedy to a party for a legal wrong that gives rise to a cause of action. An injunction, therefore, must be supported by a cause of action. We find an example in *Cole v. Mayans*, 276 Kan. 866, 869, 80 P.3d 384 (2003), where a candidate for mayor of Wichita "filed a petition . . . seeking a temporary and permanent injunction" on the basis that another candidate's "contribution from his legislative campaign account violated Wichita campaign finance ordinances." Contrary to Hunter's argument, the candidate brought her

16

"cause of action *under the Wichita ordinances*," not under the injunctive relief statutes. (Emphasis added.) 276 Kan. at 871.

Since Hunter did not have a cause of action under KORA, it lacked standing to obtain an injunction enforcing KORA. For the same reason, Hunter lacked standing to obtain a decision on the predicate question of whether the e-mails were part of the public record. Given this lack of standing, we will not review the district court's decision that the e-mails were not part of the public record because the matter is moot. See *Smith v. Martens*, 279 Kan. 242, 244-45, 106 P.3d 28 (2005).

We also decline to consider the Eagle's requests to strike WSU's appellate brief and disregard it as a party based on the Attorney General's entry of appearance and WSU's subsequent change in legal position in this lawsuit. Although WSU and the Attorney General are subject to KORA, we have concluded this is not a KORA action.

The judgment and orders of the district court are reversed, and the case is remanded with directions to dismiss the petition.