NOT DESIGNATED FOR PUBLICATION

No. 127,371

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WESTWOOD,
*Appellee*,

v.

STATE OF KANSAS, *ex rel.*, KRIS W. KOBACH, Attorney General, and STEPHEN M. HOWE,
District Attorney for Johnson County,
*Appellees*.

v.

REBECCA R. BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Oral argument held October 15, 2024. Opinion filed November 15, 2024. Reversed and remanded with directions.

*Jeffrey R. King*, of Crossroads Legal Solutions, LLC, of Westwood Hills, and *Ryan Kriegshauser*, of Kriegshauser Ney Law Group, of Olathe, for appellant.

*Ryan B. Denk* and *Spencer A. Low*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee City of Westwood.

No appearance by appellees State of Kansas, *ex rel.*, Kris W. Kobach and Stephen M. Howe.

Before COBLE, P.J., GARDNER, J., and CARL FOLSOM III, District Judge, assigned.

PER CURIAM:  The sale of a municipal park by the City of Westwood (Westwood) was the topic of a protest petition submitted by Westwood citizens seeking to put the sale

1

to public vote. One of the signatories of that petition was Rebecca R. Brown. Brown, who attempted to intervene in Westwood's district court case, now challenges the Johnson County District Court's judgment in that case declaring the citizens' protest petition deficient in form and content and declining to address her motion to intervene as moot. Brown appeals, and based on our order, the parties first argue whether we possess jurisdiction over the appeal and whether Brown has standing to pursue this appeal or intervene. Assuming we do have jurisdiction and that she has standing, Brown argues that the district court abused its discretion in denying her motion to intervene. Brown also contends the district court misconstrued the relevant statutes to find the protest petition deficient and the court should have nullified the sale because of Westwood's alleged failure to provide adequate notice.

On our thorough review, we find we do possess jurisdiction over this appeal, both because Westwood filed its action as a declaratory judgment under Chapter 60 and because the district court's denial of a motion to intervene is immediately appealable. But additional factual development is required to determine whether Brown has standing to pursue her appeal, and the district court erred by deciding the merits of the action before inquiring into standing and deciding Brown's motion to intervene on its merits. We must reverse the district court's denial of her motion to intervene as moot and remand the case to the district court to properly consider both Brown's standing and her motion.

FACTUAL AND PROCEDURAL BACKGROUND

In March 1969, Westwood purchased property at the corner of West 50th Street and Rainbow Boulevard from Fred and Bessie Ellis. Whether formally or informally, Westwood used a portion of the property as a municipal park, eventually denoted the "Joe D. Dennis Park." Before litigation and before the district court, the parties disputed whether Westwood legally designated the property as a municipal park within the meaning of K.S.A. 12-1301, which imposes requirements on cities for sale of public

2

parks. On appeal, however, Westwood concedes that the district court determined that K.S.A. 12-1301 applied to a portion of the property and that Westwood had not appealed that determination. For purposes of this appeal, then, a lengthy discussion of the property's use and designation as a municipal park is unnecessary.

At a city council meeting on March 9, 2023, Westwood entered into a "Funding and Exclusive Rights Agreement" with Karbank Holdings, LLC (Karbank) for the sale of property at the corner of West 50th Street and Rainbow Boulevard, including the area used as a municipal park, for private development. This agreement eventually led to a "Real Estate Purchase Agreement" between Westwood and Karbank, signed on June 8, 2023. The sale of the park property was part of a complicated transaction, the details of which are not important to this appeal.

Westwood claims it announced the city council meeting agendas on the city's website. Months after approving the purchase agreement, after rezoning disputes and eventual rezoning, and after a letter from an attorney notifying Westwood of its duty to publish notice under K.S.A. 12-1301, Westwood published notice of the proposed sale in the local newspaper, *The Legal Record*, on November 7 and 14, 2023. The notice on each date was identical and provided:

> "Pursuant to K.S.A. 12-1301, notice is hereby given that the City of Westwood, Kansas, intends to sell certain property that may be considered public park property, such property commonly known and numbered as 5000 Rainbow Blvd. (Johnson County Parcel Nos. RP63000001 0001 and RF251203-3060) and 5050 Rainbow Blvd. (Johnson County Parcel Nos. RP27000000 008D and RP30000001 0012B). Full legal descriptions of such parcels are available at Westwood City Hall, 4700 Rainbow Blvd. The City of Westwood reserves all rights to challenge the applicability of K.S.A. 12-1301 as to such parcels."

On December 12, 2023, residents of Westwood filed 11 petitions with the Westwood City Clerk, for which the clerk signed acknowledgment of receipt. The petitions contained varying numbers of signatures, protesting Westwood's proposed sale of the park for private development. Brown was not the circulator of any of the petitions, but she signed one of them. Although the petitions all had different signatories, the form of the petitions were the same and each provided:

## "PETITION OF PROTEST OF THE CITY OF WESTWOOD, KANSAS' SALE, TRADE, OR EXCHANGE IN CONNECTION WITH JOE D. DENNIS PARK

"Re: The City of Westwood, Kansas' sale, trade, or exchange of Joe D. Dennis Park

"The undersigned hereby invokes the provisions of Kansas Statutes Annotated 12-1301 (Land for park purposes; sales or exchanges in connection with parks; use of moneys; notice; protest; election; validation of prior sales and conveyances) and do hereby register protest under K.S.A. 12-1301 against the City of Westwood, Kansas' proposal to sell, trade, or exchange the following described property:

"Joe D. Dennis Park generally located at the southwest corner of 50th and Rainbow Boulevard in Westwood, KS 66205.

"The undersigned hereby certify that they are a qualified elector within the corporate limits of Westwood, Kansas, and join this petition with the intent to meet the threshold number of qualified electors necessary to require the governing body to place on the ballot the question as to whether the Joe D. Dennis Park shall be sold, traded, or exchanged."

Each petition had one or more circulator affidavits attached. While the names of the circulators changed, each affidavit was printed in the same form:

4

"CIRCULATOR'S AFFIDAVIT

"State of <u>Kansas</u>
"County of <u>Johnson</u>

"I, <u>[Name of Affiant]</u>, a resident of the State of Kansas, being first duly sworn, say the attached list of individuals signed the foregoing petition, and each of them signed his or her name thereto in my presence; I believe that each has stated his or her name, registered voting address and city, town, or village correctly, and that each signer is a registered voter of the State of Kansas, County of Johnson, City of Westwood.

FURTHERMORE, I HEREBY SWEAR OR AFFIRM UNDER PENALTY OF PERJURY THAT ALL STATEMENTS MADE BY ME ARE TRUE AND CORRECT AND THAT I HAVE NEVER BEEN CONVICTED OF, FOUND GUILTY OF, OR PLEAD [*sic*] GUILTY TO ANY OFFENSE INVOLVING FORGERY.
"I am at least 18 years of age, I do ____ do not <u>X </u>(check one) expect to be paid for circulating this petition. If paid, list the payer _____."

Each affidavit was followed by the signature and printed name of the affiant and the affidavit was sworn and notarized before a notary public.

The city clerk forwarded the petitions to the Johnson County Counselor's office on January 10, 2024. On January 17, the county counselor provided a letter, expressing the opinion that the combined petitions—considered as a single petition—failed to state a question in a form that complies with Kansas law. That same day, the city council in special session adopted a resolution invalidating the petitions on several procedural grounds regarding the submission and form of the petitions. The council concluded that it lacked statutory authority to amend the petitions to comply with state statutes and the petitioners could not remedy the defects in the petitions.

5

The following day, Westwood filed a declaratory judgment action under K.S.A. 60-1701 in the district court, naming the State of Kansas, the Kansas Attorney General, and the Johnson County District Attorney as defendants. In Counts I and II of its petition, Westwood sought a judicial determination that the form of the petitions was invalid and a judicial affirmation of the city council's resolution. In Count III, Westwood also sought a judicial declaration that K.S.A. 12-1301 was inapplicable to the dispute because the property in question was never formally dedicated as a municipal park.

The district court held a preliminary scheduling hearing on February 6, 2024. After the hearing, Brown moved to intervene in the proceedings and submitted her proposed competing petition for declaratory relief, quo warranto, damages, and injunctive relief or mandamus. On February 20, 2024, the court held another nonevidentiary hearing. The court assumed for the purposes of the hearing that Brown was properly allowed to intervene and permitted Brown's counsel to participate. Although the State defendants appeared through counsel, that counsel specified the State did not "really have a position on any of these matters." Westwood argued that only the attorney general or district attorney had a statutory right to challenge the municipal resolution about the petitions. Westwood also claimed that Brown lacked standing to challenge the resolution. Brown responded that Westwood failed to provide sufficient notice to residents. The district court took a brief recess before informing the parties that it would address the motion to intervene and standing in a written order.

On February 23, 2024, the district court issued a judgment granting declaratory judgment in favor of Westwood on Counts I and II regarding the form of the petitions and denying declaratory judgment on Count III because it would require an evidentiary hearing and, because Westwood felt only judgments on Counts I and II were necessary to determine whether a ballot question was required, it did not consider Count III further. The district court found Brown's motion to intervene moot without discussion.

Brown filed a timely notice of appeal from the judgment. Westwood asked this court to dismiss the appeal for lack of subject matter jurisdiction and for Brown's lack of standing. We denied the motion and ordered the parties to brief the issue of standing, and we have now considered the parties' briefing and oral arguments.

A THRESHOLD ISSUE: JURISDICTION

In its appellate brief, Westwood contends we lack subject matter jurisdiction to consider Brown's appeal. Though the issue was not raised in the district court, jurisdiction is a matter a court may consider at any time, even on its own initiative for the first time on appeal. See *Benchmark Property Remodeling v. Grandmothers, Inc*., 319 Kan. 227, 233, 553 P.3d 974 (2024). An appellate court exercises unlimited review over issues concerning subject matter jurisdiction. 319 Kan. at 233.

Article 3, section 3 of the Kansas Constitution provides that Kansas courts only possess appellate jurisdiction as provided by law. Consequently, appellate jurisdiction exists only as provided by statute. 319 Kan. at 233. Now characterizing the district court's decision only as a special proceeding under K.S.A. 25-3601(e)—a law outlining procedures applicable to petitions for elections—Westwood contends this statute does not provide for appellate review because it only suggests review by the district court. The law reads:

> "(e) Any action challenging the validity of the form of a question in a petition shall be filed *in the district court* within 20 days after such petition has been filed with the county election officer.
> "The court shall render an opinion in any action filed to challenge the validity of the form of a question in a petition within 20 days after the date such action is filed with the court." (Emphasis added.) K.S.A. 25-3601(e).

7

But Westwood's argument is uncompelling. Westwood did not seek judicial review under K.S.A. 25-3601(e) but under K.S.A. 60-1701, the declaratory judgment statute. Westwood's petition only relies on K.S.A. 25-3601 in Count I, where it challenges the form of the question presented in the protest petitions. Neither of the two remaining counts of Westwood's petition mention K.S.A. 25-3601, and the claims raised by Westwood in its petition are considerably broader than the scope of judicial review authorized by K.S.A. 25-3601(e), which permits only a challenge to the validity of the form of a question in a petition.

By framing the action as a declaratory judgment action under K.S.A. 60-1701 et seq., and obtaining a judgment within that framing, Westwood is now judicially estopped from reframing its action on appeal. See *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" [quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895)]); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 263, 261 P.3d 943 (2011) ("The [judicial estoppel] doctrine is a flexible one, operating with sufficient suppleness to remedy impermissible manipulations in varied situations.").

Declaratory judgments, whether framed in the affirmative or the negative, are subject to appellate review like any other judgment of the district court. See K.S.A. 60-1701 ("The declaratory may be either affirmative or negative in nature, and such declarations shall have the force and effect of a final judgment."); K.S.A. 60-1709 ("All orders and judgments under this act may be reviewed as other orders and judgments as provided in K.S.A. 60-2101 through 60-2103 and amendments thereto.").

8

In addition to our power to hear appeals from declaratory judgments, another basis for jurisdiction exists. That is, the nature of the district court's action from which Brown appeals. Brown challenges the district court's declaratory judgment and its refusal to grant her motion to intervene in the declaratory proceedings under the authority provided in K.S.A. 2023 Supp. 60-2102(a)(4), as an appeal of a final decision. The denial of a motion to intervene is immediately and independently appealable. See *City of Mulvane v. Henderson*, 46 Kan. App. 2d 113, 117, 257 P.3d 1272 (2011) ("It should be noted that the denial of a motion to intervene is an appealable final order."). We may properly exercise appellate jurisdiction to review these rulings by the district court.

ADDITIONAL FACTUAL DEVELOPMENT IS
REQUIRED TO ASSESS WHETHER BROWN HAS STANDING

As indicated above, this court ordered the parties to address standing. Whether a party lacks standing to litigate an action is question of law subject to unlimited appellate review. *League of Women Voters of Kansas v. Schwab*, 317 Kan. 805, 814, 539 P.3d 1022 (2023).

The Kansas Supreme Court has interpreted the judicial power under the Kansas Constitution to find a court may exercise its authority to decide only genuine cases and controversies. Accordingly, if challenged, a party must be prepared to demonstrate a legally cognizable injury and a causal connection between the injury and its opponent's challenged conduct. 317 Kan. at 813. Here, the parties do not dispute the causal connection between Westwood's conduct (negotiating a sale of the municipal park property) and Brown's alleged grievance. Rather, they present competing arguments regarding the legally cognizable nature of Brown's injury. A cognizable injury is "a personal interest in a court's decision" without which the claimant "suffers some actual or threatened injury as the result of the challenged conduct." *Sierra Club v. Moser*, 298 Kan. 22, 33, 310 P.3d 360 (2013).

9

When a right is created by statute, a party must establish both that the statute authorizes a private cause of action and that he or she possesses traditional standing. See *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021) (noting that plaintiff must demonstrate right to bring claim under open records act); *Creecy v. Kansas Department of Revenue*, 310 Kan. 454, 460, 447 P.3d 959 (2019) (standing encompasses demonstration of ability to seek relief under the Kansas Judicial Review Act); *In re Estate of Mouchague*, 56 Kan. App. 2d 983, 987, 442 P.3d 125 (2019) (discussing statutory authority to bring action under the Kansas Probate Code); *Hunter Health Clinic v. Wichita State Univ.*, 52 Kan. App. 2d 1, 6-7, 362 P.3d 10 (2015) ("Kansas law provides that '[t]o have standing, a party must satisfy any statutory standing requirements and meet the traditional tests for standing.'" [quoting *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, Syl. ¶ 2, 307 P.3d 1255 (2013)]).

*Statutory Standing*

Westwood contends that individual residents within a municipality do not have a private cause of action to compel a municipality to comply with K.S.A. 12-1301; only the State may bring an enforcement action. Whether a statute creates a private cause of action is a question of law subject to unlimited review. *Kansas Fire and Safety Equipment v. City of Topeka*, 317 Kan. 418, 426, 531 P.3d 504 (2023).

Again, Westwood's argument on appeal is unpersuasive. Relying on *Douglas v. City of Wichita*, 148 Kan. 619, 83 P.2d 657 (1938), Westwood contends that a resident does not have a private cause of action to enforce K.S.A. 12-1301. But Westwood did not deny Brown's protest petitions for failing to comply with K.S.A. 12-1301. In fact, Westwood has never suggested the protest petitions failed to meet the requirements of K.S.A. 12-1301 standing alone—it only claimed the Petition Procedure Act, K.S.A. 25-1601 et seq., imposes formal requirements on a petition submitted under K.S.A. 12-1301.

10

Westwood's rejection of the protest petitions relied solely on its finding that they failed to comply with the Petition Procedure Act.

Without finding that the Petition Procedure Act applies in this instance, we recognize that K.S.A. 25-3601 et seq. does not contain a specific provision regarding standing. Instead, the language of K.S.A. 25-3601(b) is broad, permitting "[a]*ny person*" to challenge the "validity of the form of a question," and such person "shall have the burden of proving in the district court that the form of the question is invalid." (Emphasis added.) K.S.A. 25-3601(e) likewise does not limit the scope of standing to challenge the validity of the form of a question in the district court. Nothing within K.S.A. 25-3601(b) or (e) suggests the Legislature intended to limit enforcement to the State of Kansas.

Further, we find *Douglas*, the case cited by Westwood to suggest Brown lacks statutory standing under K.S.A. 12-1301, is inapplicable to these facts. 148 Kan. 619. The dispute before us differs from the dispute presented in *Douglas* and is both legally and factually distinguishable. In *Douglas*, the City of Wichita purchased land under K.S.A. 12-1301 to be used as a public market, and the issuance of bonds for the purchase was submitted to Wichita voters and passed. Several years after purchasing the land, Wichita did not develop the land into a public market, and Douglas brought a mandamus action, attempting to force Wichita to develop the public market. The Kansas Supreme Court granted a demurrer to the action on the basis that Douglas lacked an interest in the action greater than any other resident of Wichita. 148 Kan. at 623.

Contrary to Westwood's argument, *Douglas* did not involve a challenge to the validity of a protest petition under K.S.A. 12-1301. While Wichita acknowledged that it acquired the land by bond and related public vote for use as a public market under K.S.A. 12-1301, Douglas did not obtain and present a protest petition when Wichita later passed a city ordinance disposing of the property. Douglas sought to enforce the use of the property as a public market by seeking to enjoin Wichita from using the property for

11

another purpose. As a result, *Douglas* did not involve the rejection of a protest petition. The *Douglas* court found that an action must be brought by a county attorney or the attorney general when an individual plaintiff lacks an interest in the issue different from that of all other private citizens and taxpayers. 148 Kan. at 622-23.

This brings us to Brown's interest in this issue, which is more a matter of traditional standing rather than statutory standing. For purposes of this decision, we will assume Brown meets the statutory standing requirement under either K.S.A. 12-1301 or the Petition Procedure Act, because our decision rests primarily on whether she possesses the requisite traditional standing to maintain this appeal.

*Case-or-Controversy Standing: More Evidence is Needed*

As stated above, a party may not rely on statutory authority alone to establish standing. He or she must also demonstrate compliance with traditional concepts of standing. *Hunter Health Clinic*, 52 Kan. App. 2d at 6-7. Westwood contends that Brown has suffered no injury greater than any other citizen of Westwood, which is not an injury the law is prepared to recognize. In other words, Westwood contends that Brown cannot establish an injury unique to her.

This argument appears to rely on principles of federal prudential standing. See *Kansas Bldg. Industry Workers Compensation Fund v. State*, 302 Kan. 656, 679, 359 P.3d 33 (2015) ("The prudential standing principles are: (1) the plaintiff asserts his or her own rights and not those of a third party; (2) the plaintiff's grievance is not a general one shared by a large class of citizens; and (3) the interests which the plaintiff seeks to protect are arguably within the zone of interests protected by statutory or constitutional guarantee."). Nevertheless, Kansas courts have seemingly adopted these prudential principles as part of the standing requirements, holding that, to constitute a legally cognizable injury, the injury must affect a party in a personal and individual manner and

may not base a claim to relief on the legal rights or interests of third parties. *Peterson v. Ferrell*, 302 Kan. 99, 103, 349 P.3d 1269 (2015); *Moser*, 298 Kan. at 33; *Ternes v. Galichia*, 297 Kan. 918, 922, 305 P.3d 617 (2013).

Westwood argues Brown has suffered no greater injury through the denial of the protest petition than any other resident in Westwood, all of whom will be affected by the sale of the park property for private development. See *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 495, 14 P.3d 1154 (2000) ("Sweeping complaints about the unauthorized practice of law and potential harm to the public do not amount to specific injuries."). But this argument ignores the procedural framing of this appeal.

The signatories of the protest petitions filed in this case have suffered a legal injury distinct from residents of Westwood generally or members of the Westwood electorate specifically. The signatories of these protest petitions have had their petitions rejected, not on substantive grounds, but on questionable legal or procedural technicalities. Without specific authority requiring as much, Westwood applied the provisions of the Petition Procedure Act to the protest petitions brought under a more specific statutory framework—K.S.A. 12-1301. Due to the legal uncertainty of this application, Westwood then sought a judicial determination through declaratory judgment to clear the potential cloud on its pending sale. Brown and other signatories to these petitions have suffered a legally cognizable injury in Westwood's rejection of their protest petitions on a potentially illegal basis.

Our court has previously found a petition circulator has standing to sue, based partly on the circulator's acting "in a representative capacity for the electors that signed the petition." *City of Prairie Village v. Morrison*, No. 104,918, 2011 WL 6310196, *4 (Kan. App. 2011) (unpublished opinion). And Brown suggests she was not only a signatory to the protest petitions but was also "heavily involved in the Protest process" and a "recognizable face in the community as a leader opposing the" sale. At oral

13

argument, her counsel suggested she also lived near enough to the proposed development such that anticipated traffic would directly affect access to the driveway of her residence—an allegation which was generally included in her motion for intervention, as well, including a referenced traffic study. But this appellate court is not a fact-finder, and the district court made no findings on these alleged facts for us to review. Was Brown's involvement in the petition circulation process sufficient to confer standing? Does the adjacency of her home to the proposed development provide another basis for cognizable injury? We cannot say. It is the district court which must make the necessary findings to determine whether Brown "personally suffers some actual or threatened injury," whether that is in the form of a signatory to the protest petition or in another fashion. See *Sierra Club*, 298 Kan. at 33.

This lack of fact-finding leaves us in a quandary where we can neither definitively find a lack of standing, nor can we assume standing, at this juncture. The reason for this is the district court's error—that is, deciding the merits of the action without first considering matters of standing and intervention.

### THE MOTION TO INTERVENE MUST BE DECIDED FIRST

Rather than addressing the issue of standing and intervention, the district court dismissed Brown's motion to intervene as moot after deciding the merits of Westwood's petition. We find this method and order of events both legally insufficient and inconsistent.

We review a district court's decision on intervention under an abuse of discretion standard. *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 666, 722 P.2d 1093 (1986). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In the Matter of Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022).

14

Three factors must have been present for the district court to permit Brown's intervention under K.S.A. 60-224(a)(2): "'(1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests.'" *Montoy v. State*, 278 Kan. 765, 766, 102 P.3d 1158 (2005) (quoting *Knutson*, 239 Kan. at 666). The parties do not dispute Brown's motion to intervene was timely filed. Westwood tacitly admits a potential correlation between if the district court were to find Brown has standing, she likewise demonstrates a sufficient interest in the litigation to sanction her intervention. The parties dispute whether adequate representation of Brown's interest exists without her participation.

Again, though, it is not for us to decide these questions, as none of them were answered by the district court. But as evidenced by the record, the district court clearly accepted both Brown's interest in the litigation and an inadequate representation of those interests without her participation by acknowledging it thought "Mr. Kriegshauser [Brown's counsel] back there . . . is the other side" opposing Westwood and identified Brown as "an indispensable party that needed to be added to this case." Yet, the district court made no formal findings as such, and in fact ignored as much when addressing the merits of Westwood's action without first addressing Brown's position.

Mootness is not defined in the Kansas statutes. Our Supreme Court has defined a moot case as "a case in which determination of an abstract question is sought when in reality there is no actual controversy existing." *Lawrence Preservation Alliance, Inc. v. Allen Realty, Inc.*, 16 Kan. App. 2d 93, 107, 819 P.2d 138 (1991) (citing *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 [1945]). Black's Law Dictionary defines "moot" as "[h]aving no practical significance; hypothetical or academic" and "no longer involving a real, live controversy." Black's Law Dictionary 1205 (12th ed. 2024). Here, Brown's intervention is not an abstract question, and her participation has real practical significance to whether a true controversy existed before the district court.

15

A search for authority on why a motion to intervene, like Brown's, should be decided before the merits of the case yields nothing. But we find the answer to be intuitive. If Brown had the right to intervene, it necessarily follows that her rights are not adequately protected. Resolving the case against her without adequate representation in the proceedings is a matter of due process—the meaningful opportunity to be heard. See *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 544, 216 P.3d 158 (2009) ("Due process provides any interested party with the elementary and fundamental right to notice of the pendency of an action and the opportunity to present its objections in any proceeding that is to be accorded finality.").

Westwood contends that this error should be deemed harmless because Brown's attorney argued at the district court hearings. But her attorney's participation involved only a portion of the overall proceedings. Brown not only tried to respond to Westwood's petition for declaratory judgment, but she sought to raise additional claims against Westwood. These claims have gone unresolved, not on substance, but because the district court denied the motion to intervene as moot first. The district court's conduct is inconsistent at best, and erroneous because it tacitly granted the motion to intervene in its consideration of Brown's necessary participation in the case, despite its ruling to the contrary, without first considering Brown's interests. Its decision was likewise flawed for permitting Brown's attorney to advocate against Westwood's petition when Brown was not a party to the case. The district court apparently sought the benefit of argument opposing Westwood's position to assist with deciding the case but wanted to avoid resolving Brown's counterclaims. Accordingly, Brown was thrust into a state of limbo where she was permitted to respond to Westwood's arguments yet not allowed to fully present her own. A better approach by the district court would be to presume both standing and the right to intervene, then resolve the substantive issues presented by all parties.

16

On remand, we foresee additional issues that may arise for which we lack the evidence and findings to determine now. First, a real question exists whether Westwood possesses "case and controversy" standing without Brown's presence in this action. The State has consistently maintained that it lacks an interest in the litigation and has not filed a brief in this appeal nor did it appear at argument. If, indeed, Brown lacks standing to challenge the city council's action, where is the case or controversy justifying Westwood's own standing to obtain declaratory judgment? Though standing requirements are relaxed in a suit seeking only a declaration of rights, the case must still present a case or controversy. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896-97, 179 P.3d 366 (2008).

Second, the parties have not addressed whether "[a]ny election required as herein provided *shall be called* and held *as provided by law for bond elections*," as the last sentence of K.S.A. 12-1301 requires. (Emphases added.) Kansas general municipal bond law is found in K.S.A. 10-101 et seq. and permits an election on any bond issue where an enabling act allows for petitions. K.S.A. 10-120a(c); see Parnacott, *People Have the Power: The Power of the Petition*, 80 J.K.B.A. 32, 41 (March 2011). Does this necessarily mean that the Petition Procedure Act does not apply? May the court, through statutory interpretation, properly synchronize all three statutory frameworks (K.S.A. 12-1301, general municipal bond law, and the Petition Procedure Act), especially considering the distinct timelines outlined in each? Finally, applying bond election procedure, does Westwood, as the municipality, bear a greater responsibility in ensuring the calling of an election than do citizens who have complied with K.S.A. 12-1301 on its face? These are all puzzles we are not at liberty to solve given the limited questions before us today.

CONCLUSION

We acknowledge the expedited nature of this proceeding, and that this decision will necessarily result in continued postponement of Westwood's pending real estate sale. While a regretful consequence, it is of utmost importance that litigants have their disputes properly considered on their merits. Had the district court first considered the propriety of Brown's intervention, it would have then undergone an analysis of Brown's interest in the litigation, both in terms of her cognizable injury for traditional standing purposes, and for purposes of intervention. By skipping this necessary analysis, the district court misapplied the law by denying Brown due process and perhaps ignoring the lack of controversy if Brown were not a party to the litigation.

We draw attention to the maxim cited by the district court: "[C]ourts should '"exercise extreme"' caution when rejecting citizens' initiative or referendum petitions on mere technicalities." *City of Wichita v. Peterjohn*, 62 Kan. App. 2d 750, 756, 522 P.3d 385 (2022). Given this policy, we direct the district court to provide a full and fair hearing on the issue of Brown's intervention and, relatedly, her standing to proceed, with adequate notice and the opportunity to develop and present relevant evidence. See *Lawrence Preservation Alliance, Inc.*, 16 Kan. App. 2d at 107 (considering a second appeal on a property owner's suit challenging city's denial of a demolition permit, and finding the city acted arbitrarily and capriciously in failing to notify group and historical society of hearing and in refusing to grant continuance to allow full airing of relevant factors and feasible and prudent alternatives).

Reversed and remanded with directions.